2021 IL App (2d) 190073
Nos. 2-19-0073 & 2-19-0074 cons.
Opinion filed May 25, 2021

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) ) | Nos. 11-CF-3129 11-CF-3236 |
| BRET D. NEWMAN, | ) ) | Honorable Daniel B. Shanes, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court, with opinion.
Justices Zenoff and Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant, Bret D. Newman, was charged with aggravated criminal sexual abuse (720 ILCS 5/11-1.60(c)(1)(i) (West 2010)) and sexual exploitation of a child (*id.* § 11-9.1(a-5)) (case No. 11-CF-3129). He was charged separately with 10 counts of aggravated child pornography (*id.* § 11-20.1(a)(1)(vii), (a)(6)) (case No. 11-CF-3236). He entered negotiated pleas of guilty to aggravated criminal sexual abuse and two counts of aggravated child pornography. The court sentenced him to concurrent terms of 13 years' imprisonment for aggravated child pornography and a consecutive term of 36 months' probation for aggravated criminal sexual abuse.

¶ 2    Defendant did not file a postjudgment motion or a direct appeal. He petitioned under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)), alleging that his trial attorney had been ineffective for various reasons. The petition was amended and eventually went to an evidentiary hearing. The trial court denied the petition. Defendant appeals. We affirm.

¶ 3                                  I. BACKGROUND

¶ 4    In case No. 11-CF-3129, defendant was charged with committing (1) aggravated criminal sexual abuse in that, sometime between December 5, 2008, and December 2010, for his sexual gratification, he placed his hand on the leg of E.L., who was under 13 years old at the time, and (2) sexual exploitation of a child in that, for his sexual gratification, he knowingly enticed E.L. to remove her clothing. In case No. 11-CF-3236, the first five counts alleged that defendant knowingly photographed A.P., whom he knew to be under the age of 13 at the time, and the last five alleged that he knowingly possessed photographs of A.P.

¶ 5    On April 12, 2012, the parties told the court that defendant would plead guilty to the first count of aggravated criminal sexual abuse and the first two counts of aggravated child pornography. In return, the State would dismiss the remaining charges and request sentences of no more than 4 years for aggravated criminal sexual abuse and 13 years for aggravated child pornography. The parties agreed that the sentence for aggravated criminal sexual abuse was mandatorily consecutive to the others. Defendant's attorney, Edward Edens, argued that the sentences for aggravated child pornography were not mandatorily consecutive to each other. The court admonished defendant that it might or might not make these sentences consecutive. Defendant stated that he understood. He also said that he had discussed the case with Edens, did not need more time, and was voluntarily pleading guilty.

¶ 6    The State provided the following factual basis in support of the pleas. In September 2011, E.L. told police that, several times when she visited defendant's daughter at his house, he attempted to place his hand under E.L.'s skirt. In the charged incident, defendant put his hands on her inner thigh. Antioch police detective Alex Moreno spoke to defendant about the allegations. Defendant mentioned that he had photographs of child pornography on his computer. A consensual search of the computer recovered several photographs of a young girl exposing her naked vagina. Moreno realized that the girl was not E.L. and that the photographs came from a Canon camera. A search of defendant's home turned up a memory card containing the photographs that became the basis of the child-pornography charges. The photographs showed a hand touching A.P.'s naked vagina. The hand had a distinctive scar, and the photograph was taken in a bedroom. A.P.'s parents would testify that, sometime between July 27 and August 13, 2011, she was at defendant's home for a sleepover. Moreno would testify that the scar in the photograph was the same scar that he saw on defendant's hand.

¶ 7    The court accepted defendant's pleas.

¶ 8    On May 23, 2012, after a hearing, the court sentenced defendant to concurrent 13-year prison terms for aggravated child pornography and a consecutive term of 36 months' probation for aggravated criminal sexual abuse. The court admonished defendant of his appeal rights, including that, should he wish to challenge either his convictions or his sentence, he would need to file within 30 days a motion to vacate the judgment and withdraw the guilty plea. See Ill. S. Ct. R. 604(d) (eff. July 1, 2006). The court also told him that he would have to register as a sex offender.

¶ 9    Defendant filed neither a postjudgment motion nor a timely appeal. On August 25, 2014, he filed a *pro se* petition under the Act. The petition claimed in part that Edens's assistance had been ineffective. It alleged that, on May 24, 2012, defendant asked Edens to file a postjudgment

motion claiming that Edens had failed to inform him that, to obtain a conviction of child pornography, the State would have to prove specific intent and that Edens failed to notify him that "the sentences would not be consolidated and merged in exchange for his plea."

¶ 10    Defendant's petition attached his affidavit, stating as follows. Before defendant entered his pleas, Edens did not inform him that his sentences would be separate or that there would be a separate three-year term of mandatory supervised release (MSR). Further, Edens failed to inform him that, at a trial, the State would have to prove criminal intent. On May 24, 2012, after learning of the consequences of his pleas, defendant asked Edens to file the appropriate postjudgment motion. On May 29, 2012, defendant was untimely transferred to the prison in Stateville, severing his communication with Edens and his access to the trial court.

¶ 11    On August 25, 2012, defendant filed a supplement to the petition, claiming that, with the State's knowledge, Moreno testified falsely before the grand jury. Defendant alleged that Edens was ineffective for failing to seek relief based on this violation.

¶ 12    The trial court appointed counsel for defendant. On November 29, 2016, counsel filed an amended postconviction petition. The amended petition alleged in part that, after being sentenced, defendant wrote a letter to Edens requesting that he file a motion to withdraw the guilty pleas. Edens disregarded the request, even though the motion was required to preserve defendant's right to appeal. Edens was ineffective for failing to honor the request or consult with defendant about moving to withdraw the plea and for failing to file a notice of appeal.

¶ 13    The amended petition also claimed that Edens was ineffective because he advised defendant that, at a trial, the State would have to prove only possession and not guilty knowledge. The amended petition alleged that, had defendant been properly advised, he would not have pleaded guilty to aggravated child pornography, as he could have plausibly argued that he did not

take the photographs and did not possess them with knowledge of their content. Finally, the amended petition alleged that Edens had been ineffective for failing to move to dismiss the indictment for aggravated criminal sexual abuse, based on Moreno's perjury before the grand jury.

¶ 14    The trial court advanced the cause to an evidentiary hearing. We summarize the pertinent evidence.

¶ 15    Defendant testified on direct examination as follows. On September 11, 2011, after the police questioned him, he was arrested for aggravated criminal sexual abuse and jailed. About 10 days later, he posted bond, but 3 days afterward he was returned to custody on the aggravated-child-pornography charges. Defendant testified that, while his case was pending, Edens visited him no more than five times. Their review of the evidence in the first case was limited to going over several pages of allegations by E.L.'s mother. In the second case, Edens's review of the discovery with defendant mainly consisted of telling defendant that he had seen the photographs.

¶ 16    The testimony continued:

> "Q. Did you have conversations with Mr. Edens about what facts the State would have to prove at trial as it relates to the pornography charges?
>
> A. There was a conversation about they had to prove intent, and that's pretty much all I remember gleaning from the conversation. You know, exactly what that would have entailed. I don't recall having that discussion.
>
> Q. Explain that a little bit further. Did he *** tell you that there was an intent element to prove and describe that to you or did you believe that was the case independently?
>
> A. It may be that I believed that was the case independently. I don't recall the specific conversation."

¶ 17    Defendant did not recall whether Edens expressed an opinion on whether the State could prove the charges. The testimony continued:

"Q. What was your understanding, based on your conversation with Mr. Edens, about what they had to prove beyond possessing photographs and taking photographs?

A. My impression was that the State needed to prove intent as to what the photographs entailed."

Defendant added that he had believed that the State needed to prove intent, but he did not recall "hearing that specific phrase from Mr. Edens."

¶ 18    Defendant did not recall much about the guilty-plea hearing. Sometime before the hearing, Edens had told him that he would go to prison but be home in three or four years. Edens also said that he would request probation for aggravated criminal sexual abuse. Between the guilty-plea hearing and sentencing, Edens did not meet with defendant. In addition, defendant did not recall going over the presentencing investigation report with Edens.

¶ 19    Defendant testified that, after the sentencing hearing, he never heard from Edens again. Before defendant was transferred to prison, he posted a letter to Edens asking him to file a motion to withdraw his guilty pleas. Defendant made that request because he did not commit the charged crimes. When he wrote the letter, defendant had not seen most of the State's evidence from discovery. Asked why he pleaded guilty if he did not commit the offenses, defendant testified that, at the time, he had been more concerned with his failing marriage and probably was not concentrating enough on the charges.

¶ 20    Defendant could not recall a specific conversation with Edens about an appeal. However, he testified that Edens told him that, at the sentencing hearing, he would preserve a specific issue (defendant did not recall which one) for appeal.

¶ 21 Defendant testified on cross-examination as follows. When he was out on bond, he met with Edens at a restaurant and hired him. The prosecutor asked defendant whether he recalled his answer when, at the guilty-plea hearing, the court asked him whether he had discussed with Edens the facts of the case and who the witnesses might be. Defendant did not recall. The prosecutor asked whether defendant recalled telling the court that he did not need more time to discuss the case with Edens. Defendant did not recall saying this. Further, he did not recall telling the court that he would let the court know if he had any more questions.

¶ 22 Defendant testified that he and his wife had separated before he was charged in either case. In fall 2010, he was attending Alcoholics Anonymous after an alcohol-related suicide attempt.

¶ 23 Defendant testified that he did not have a copy of the letter that he had written Edens shortly after being sentenced. After sentencing, the only time that he got mail from Edens was about two years later, when Edens sent him a grand jury-hearing transcript that he had requested.

¶ 24 On redirect examination, defendant testified that he did not keep copies of any letters he sent Edens. He thought it unnecessary, and it was difficult to get copies made in jail.

¶ 25 Defendant rested.

¶ 26 The State called Edens. He testified on direct examination as follows. In 2014, the warehouse that held his files was flooded. He continued to hold flood-damaged files for five years after they were closed. As defendant's case was pending in 2011, he destroyed the file in late 2016 or early 2017. As a result, in preparing for the hearing, Edens could not review his original file, though he had a "fairly good recollection of the case."

¶ 27 Edens testified that he first met defendant before defendant was returned to custody on the child-pornography charges. In November 2011, Edens obtained a fitness evaluation for defendant.

In December 2011, defendant was found fit. In discovery, Edens received police reports and various handwritten statements, and he viewed the photographs in the child-pornography case.

¶ 28     Edens testified that he and defendant met at the jail two or three times. Edens received a plea-bargain offer from the State and disclosed it to defendant. They discussed the offer's terms, but Edens could not recall whether defendant asked any questions. At least twice, Edens and defendant discussed the facts of the cases and what the State had to prove for each charge. Edens never told defendant that the State need not prove that his possession of child pornography was knowing.

¶ 29     Edens testified that, after he read the indictments and the police reports, he met with defendant at the jail. Edens read defendant each indictment and report, placing each page up against the glass between them so that defendant could read everything himself. Edens told defendant that the evidence "appeared to [be] overwhelming against [defendant]," and he asked how that could be, were defendant innocent. Nonetheless, defendant persisted in claiming that he had done nothing wrong, and he said that "everything was made up." Based on defendant's claims, Edens requested a fitness determination, which resulted in an expert opinion that defendant was fit.

¶ 30     Edens testified that, after viewing the photographs, including the one containing defendant's distinctively scarred hand, Edens met with defendant again, and they went through the indictments and discovery. At Edens's request, defendant showed him the back of his hand, and Edens observed that the unique scar matched the one in the photograph. Edens told defendant that it appeared irrefutable that the photograph had been taken in his bedroom and depicted him as well as A.P. there. Edens told defendant that the State had made a plea offer with a 13-year sentencing cap on the child-pornography charges. Edens strongly recommended that defendant accept the

offer because he believed that the evidence was overwhelming. Defendant then told Edens to look at Moreno's grand jury testimony, because it contained statements that were inconsistent with other evidence. Edens said that he could move to dismiss the indictment for aggravated criminal sexual abuse but that the State could just refile the indictment. That was the only time the subject was raised.

¶ 31    Edens testified that he did not recall whether he had received any letters from defendant after sentencing. If Edens had received a request to withdraw defendant's plea, he would have done so within the 30-day time limit. Edens might have received mail from defendant after sentencing, but he could not recall. After sentencing, Edens spoke with defendant's parents but not with defendant.

¶ 32    Edens testified that he and defendant discussed whether the sentences for aggravated child pornography would be concurrent or consecutive. Edens told defendant that the applicable statute had been amended so that consecutive sentences were no longer mandatory; he told defendant that, in all likelihood, the trial court would make the sentences concurrent, which is what happened. Defendant seemed to understand the discussion and was responsive to all of Edens's questions.

¶ 33    Edens testified on cross-examination as follows. When he first met defendant at the restaurant, he had no concerns about his fitness. His concern arose later when it appeared that defendant was having difficulty understanding the charges and the evidence that the State would allegedly produce. When Edens went over the police reports at the first meeting in jail, defendant was at first "in complete denial," then "appeared to be admitting to part and denying part." Defendant communicated his thoughts coherently, but his response to what Edens saw as overwhelming evidence caused Edens to request the fitness examination. After Edens viewed the

photographs and met with defendant again, defendant's denials of wrongdoing seemed even more irrational. However, Edens stipulated to the expert's opinion that defendant was fit.

¶ 34    Edens testified that, after the fitness finding, (1) he viewed the photographs, (2) discussed a possible plea offer with an assistant state's attorney, and (3) told defendant about the offer. The offer required guilty pleas to one count of aggravated criminal sexual abuse and two counts of aggravated child pornography. Edens told defendant that he could be sentenced to a total of 26 years on the latter charges, depending on whether the sentences were consecutive. Edens also told him that, given his lack of a criminal background, Edens would request concurrent sentences. He also told defendant that he would request probation for the aggravated-criminal-sexual-abuse charge. Edens said something about possible consecutive sentences for the aggravated-child-pornography charges, but Edens could not recall his specific advice.

¶ 35    Edens testified that, after the court resolved defendant's fitness issue, he again discussed the facts of the case with defendant. He went over the evidence and what the State had to prove. Over time, defendant went from "a total denial of any liability whatsoever at the earliest outset to a point where he was *** facing the overwhelming nature of the physical evidence, as well as the police reports." However, defendant still did not tell Edens exactly what had happened but kept denying that the evidence was accurate. Edens believed that defendant had never been truthful with him about the facts.

¶ 36    Moreno testified as follows. He testified before the grand jury in both cases. In the aggravated criminal sexual abuse case, he told the grand jury what E.L. had told him. Moreno told the grand jury about his interview with defendant. Specifically, he told the grand jury that defendant said that he remembered an incident in which he rubbed E.L.'s leg and another in which he asked her to show him her private parts. However, Moreno conceded that defendant had made

the latter admission in a phone call to E.L.'s mother. During the interview, defendant neither admitted nor denied having made that remark to E.L. He did admit to the leg-rubbing incident.

¶ 37    The State rested.

¶ 38    In arguments, defendant contended that the evidence proved that he had wanted to have a trial because he believed that he was innocent of all charges. But, Edens did not properly advise him about the State's burden of proof on the child-pornography charges and did not move to dismiss the indictment on the sexual-abuse charge. Defendant argued that he sent Edens a letter requesting that he file a motion to withdraw the pleas but that Edens did not.

¶ 39    Defendant contended that, because there were plausible defenses that he could have raised at trial, Edens's failure to move to withdraw the guilty pleas amounted to ineffective assistance. These potential defenses included: (1) defendant did not knowingly possess the child pornography, because other people in his household might have been responsible; and (2) on the sexual-abuse charge, defendant had not acted for sexual gratification, which would have reduced the offense to a simple battery. Thus, defendant argued, he had shown a reasonable probability that, but for Edens's errors, he would have chosen to go to trial instead of entering guilty pleas. Further, a motion to dismiss the indictment in the sexual abuse case would have had arguable merit, as apparently Moreno had intentionally misled the grand jury.

¶ 40    The State countered that defendant had not proved that he notified Edens about filing a motion to withdraw his pleas and had no plausible defense to the child-pornography charges (which alleged that he took the photographs but did not "possess" them, because a "possession" charge has different elements). Further, the State noted the following facts: (1) Edens had compared the hand shown in one photograph to defendant's hand and observed the same distinctive scar; the two photographs were taken in defendant's bedroom; (2) one memory card

was found in defendant's camera, and the other in his office. Thus, defendant could not show any plausible defense that would have benefitted him at trial. As the State saw it, defendant pleaded guilty because the evidence was overwhelming and the State offered a sentencing cap. On the sexual-abuse charge, the evidence before the grand jury was extremely strong even without Moreno's testimony.

¶ 41    The trial court denied defendant's petition. The court explained as follows. Defendant made two claims that Edens was ineffective. One claim was based on his failure to move to dismiss the indictment for aggravated criminal sexual abuse. The other claim was based on Edens's failure to move to withdraw defendant's guilty pleas after defendant wrote him a letter instructing him to do so. In both instances, defendant needed to satisfy the two-prong test of *Strickland v. Washington*, 466 U.S. 668, 687 (1984): unreasonable performance and resultant prejudice. Here, he had to prove both that Edens's assistance had been objectively unreasonable and that there was a reasonable probability that, absent Edens's errors, he would have forgone pleading guilty and elected to go to trial. See *People v. Hall*, 217 Ill. 2d 324, 335 (2005). The second prong (prejudice) required more than a bare allegation; it was crucial to show that the decision to go to trial would have been rational. *Id.* at 335-36. Among the criteria to consider in this regard were the probability of acquittal—and thus the existence of a plausible defense—and the potential penalties. *Id.*

¶ 42    On the first claim, the court concluded that defendant had failed the prejudice test. It found that the grand jury process was unaffected by the minor inconsistencies between the discovery materials and Moreno's testimony. Even if the grand jury had dismissed the indictment, it would have reindicted defendant on the same charge, as it had abundant probable cause. Moreover, defendant did not have a plausible defense to the aggravated-criminal-sexual-abuse charge: it would have been easy to prove that he rubbed E.L.'s leg for his sexual gratification.

¶ 43    The court turned to the second claim, which was directed primarily at the two aggravated-child-pornography charges. The claim alleged, in part, that Edens had not properly informed defendant that convictions would require the State to prove that defendant acted with guilty knowledge. The court noted that defendant had testified that Edens did in fact discuss the required mental state for the charged offenses. Further, the court credited Edens's testimony in general and, in particular, his statement that he had discussed all of the elements of the offense with defendant in advance of the guilty-plea hearing. Moreover, "[a]t no time did the defendant articulate, never mind to the court in his testimony but even to Mr. Edens, his attorney, any evidence that would support a plausible defense. The defendant simply said, he didn't do it maybe." Edens testified that the evidence against the defendant was overwhelming, and the court agreed.

¶ 44    The court found specifically that defendant "did not communicate a desire to withdraw his plea to Mr. Edens." The court continued,

> "[I]t's a simple thing for a defendant as a Monday morning quarterback serving a sentence *** to claim that he told his attorney to do such and such, but there's no evidence here other than what he said that he did, and there's considerable evidence in fact that he did not.
>
> Based upon credibility determinations, the Court finds he did not, at least in this case."

¶ 45    Last, the court noted that, had defendant gone to trial, he could have been sentenced to as much as 30 years on each conviction of aggravated child pornography, with the possibility of consecutive sentences. Consecutive sentences or not, this far exceeded the plea agreement's sentencing cap. He could have been sentenced to as much as seven years for aggravated criminal sexual abuse—considerably over the agreement's four-year cap, to say nothing of the actual

sentence of three years' probation. The court concluded that defendant had failed to satisfy either the performance prong or the prejudice prong.

¶ 46    After the court denied his petition, defendant timely appealed.

¶ 47                                   II. ANALYSIS

¶ 48    On appeal, defendant contends solely that the trial court erred in denying his claim that Edens was ineffective for failing to file the requested motion to withdraw his guilty pleas. Defendant does not contend that the court erred in denying his other claim of ineffectiveness, based on the failure to move to dismiss the indictment for aggravated criminal sexual abuse. Further, he does not contend that Edens was ineffective for failing to inform him that knowledge was an element of the child-pornography charges and that that knowledge would need to be proven to obtain convictions. Thus, any claim of error in these matters is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 49    We turn to defendant's claim of error concerning the trial court's factual determinations and its application of the law. Regarding the former, he contends that the court erred in finding that he did not instruct Edens to file a motion to withdraw the pleas. Regarding the latter, he contends that the court mistakenly focused on whether he would have had a rational basis to elect a trial over the plea agreement and whether he was required to establish that the requested motion to withdraw the pleas could have raised a plausible defense to any of the charges. Defendant correctly notes that distinctive rules apply to the *Strickland* calculus when (1) a claim is based on counsel's failure to preserve a defendant's appeal by filing a notice of appeal or, (2) in the case of a judgment based on a guilty plea, a postjudgment filing is needed to preserve any issues for appeal. See *Roe v. Flores-Ortega*, 528 U.S. 470 (2000); *People v. Edwards*, 197 Ill. 2d 239 (2001). However, as we explain, defendant misunderstands those rules.

¶ 50    We set out the general principles that apply to this appeal. At an evidentiary hearing on a postconviction petition, the defendant has the burden to prove, by a preponderance of the evidence, that a constitutional right has been violated. *People v. Coleman*, 2013 IL 113307, ¶ 92. A judgment denying a postconviction petition after an evidentiary hearing at which the court resolves factual disputes will not be reversed unless it is manifestly erroneous. *People v. Childress*, 191 Ill. 2d 168, 174 (2000). Thus, we must accord the trial court's factual findings, and the credibility determinations on which they were based, the deference to which such findings and determinations are due generally. See *People v. Hotwagner*, 2015 IL App (5th) 130525, ¶ 31. We may not disturb a finding of fact unless it is against the manifest weight of the evidence. See *People v. English*, 406 Ill. App. 3d 943, 953-54 (2010).

¶ 51    We turn to the factual issue first. Defendant contends that the trial court's finding that he did not specifically instruct Edens to file a motion to withdraw the guilty pleas was a manifest error. He notes that he testified unequivocally that he instructed Edens by mail to file such a motion. In contrast, Edens testified that, having long since destroyed the file of the original case, he could not recall receiving any such instruction but would have filed the motion had he received that instruction.

¶ 52    We cannot say that the trial court's finding was against the manifest weight of evidence. As noted, the trial court explicitly found that defendant's testimony on this matter was not credible and that Edens's testimony was. Therefore, the court simply did not believe defendant's assertion that he mailed Edens the alleged letter. Although Edens did not categorically deny that defendant mailed him the letter, the court did not need to require Edens to prove a negative to reject defendant's testimony. First, it was defendant's burden to prove the factual allegations of his petition. In concluding that defendant had not done so, the trial court properly relied on its

perception of defendant's believability in general and his admission that he never made a copy or other contemporaneous record of the alleged letter, despite its great importance. Second, Edens did testify that he did not recall whether he received any letters from defendant after sentencing but that, if he had been instructed to file a motion to withdraw the pleas, he would have done so in line with his customary practice as an experienced criminal defense lawyer. This testimony was strong circumstantial evidence that defendant did not instruct Edens to file a postjudgment motion. Accordingly, the trial court did not manifestly err in concluding that defendant did not request Edens to file a motion to withdraw his guilty plea.

¶ 53    Nevertheless, as defendant observes, where a defendant does not specifically instruct his attorney to file a notice of appeal, ineffective assistance can still be demonstrated by showing that the attorney failed to consult with the defendant about filing an appeal and that either (1) a rational defendant would have wanted to file an appeal (for example, because there were nonfrivolous grounds for an appeal) or (2) the defendant reasonably demonstrated that he desired to appeal. See *Flores-Ortega*, 528 U.S. at 480. This same analytical framework applies to the failure to file a motion to withdraw the plea. See *Edwards*, 197 Ill. 2d at 253; *People v. Cuevas*, 2018 IL App (2d) 151100, ¶¶ 25-26.

¶ 54    A lawyer who disregards specific instructions from a defendant to file a notice of appeal acts in a professionally unreasonable manner, while a defendant who explicitly tells his attorney not to file a notice of appeal cannot complain later that the attorney performed unreasonably by following his directions. *Flores-Ortega*, 528 U.S. at 477; *People v. Rovito*, 327 Ill. App. 3d 164, 169 (2001). Given the trial court's factual findings, neither hypothetical situation is present here. Thus, the performance issue hinges on whether Edens in fact consulted with defendant about filing a motion to withdraw the plea. See *Flores-Ortega*, 528 U.S. at 478; *Rovito*, 327 Ill. App. 3d at 169.

Edens did not. That being the case, his performance was deficient only if, as noted, either (1) a rational defendant would have wanted to file an appeal (for example, because there were nonfrivolous grounds for an appeal) or (2) the defendant reasonably demonstrated that he desired to appeal. See *Flores-Ortega*, 528 U.S. at 480. We note here only that the proof of either of these prerequisites is questionable at best. However, we need not say definitively, as defendant did not satisfy the prejudice prong. See *People v. Hale*, 2013 IL 113140, ¶ 17 (courts may dispose of an ineffective-assistance claim by proceeding directly to the prejudice prong without addressing counsel's performance). We explain why.

¶ 55    As to prejudice, defendant contends that he had to prove only a reasonable probability that, but for counsel's failure to file the required motion, he would have timely appealed. See *Flores-Ortega*, 528 U.S. at 484. In this regard, defendant argues that, although evidence that there were nonfrivolous grounds for an appeal is highly relevant to this test, it is unnecessary to prove that the motion or the appeal would have been successful or even meritorious. See *id.* at 485. Instead, relying on *Edwards*, defendant contends that, after proceeding to the second stage, a defendant need provide only "some explanation of the grounds that could have been presented in the motion to withdraw the plea." *Edwards*, 197 Ill. 2d at 258. Defendant contends that he presented such an explanation. He cites his testimony that he (1) wanted to withdraw his plea because he did not believe that he was guilty, (2) believed that Edens had not adequately reviewed the evidence before the plea hearing, (3) pleaded guilty because he was preoccupied with his failing marriage, and (4) believed that Edens doubted his fitness. Defendant contends that this indicates grounds to support a motion to withdraw his pleas as involuntary or unknowing. Accordingly, he argues that these grounds satisfy the low threshold of *Edwards*. We disagree.

¶ 56 Defendant erroneously interprets *Edwards* as holding that a defendant need show no more at the second and third stages than at the first stage to demonstrate prejudice. Though *Edwards* was a first-stage dismissal case, in addressing the defendant's second-stage burden on remand, the court, in judicial *dicta*, noted:

> "To merit an evidentiary hearing on his claim that he told his trial counsel to file a motion to withdraw his guilty plea and that counsel was constitutionally ineffective for failing to do so, defendant will have to make a substantial showing to that effect. [Citation]. Such a showing will necessarily entail some explanation of the grounds that could have been presented in the motion to withdraw the plea." *Id.* at 257-58.

"[A] judicial *dictum* is entitled to much weight, and should be followed unless found to be erroneous." *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 278 (2009). Accordingly, courts citing *Edwards* have applied the substantial showing requirement to both second- and third-stage proceedings. See *People v. Gomez*, 409 Ill. App. 3d 335, 340 (2011) (second stage); *People v. Hughes*, 329 Ill. App. 3d 322, 326 (2002) (third stage).

¶ 57 With this in mind, *Gomez* is instructive. There, the defendant entered an open plea of guilty to a sexual offense. The court denied a motion to reconsider his sentence. On appeal, he argued that his sentence was excessive, but we affirmed. The defendant then filed a postconviction petition that, as amended, claimed that his trial counsel was ineffective for failing to honor his request to file a motion to withdraw the guilty plea. *Gomez*, 409 Ill. App. 3d at 336-38. The trial court granted the State's motion to dismiss the amended petition, and we affirmed. *Id.* at 338, 342. On the issue of prejudice, we noted that the defendant contended that, under *Flores-Ortega*, prejudice must be presumed. *Id.* at 339. We disagreed. As pertinent here, we explained there:

> "Because defendant's petition survived summary dismissal, he had to establish at stage two, pursuant to *Edwards*, on what justifiable basis he could have moved to withdraw his guilty plea and that there was a reasonable probability that the motion would have been granted allowing [the] defendant to withdraw his guilty plea." *Id.* at 340.

In holding that the defendant had not met this burden, we noted that the sole basis provided for his motion to withdraw his plea was that he was innocent. The record, however, refuted this allegation, as defendant had admitted several times that he was guilty in the original proceeding. *Id.*

¶ 58    As in *Gomez*, defendant here plainly has not raised a reasonable probability that the motion to withdraw his pleas would have been granted. It is settled that a defendant bears the burden to demonstrate to the trial court the necessity of withdrawing a plea and that leave to do so is granted only as required to correct a manifest injustice under the facts involved. *People v. Ferral-Mujica*, 2017 IL App (2d) 160240, ¶ 22. Leave should be granted if (1) the plea was entered on a misapprehension of the facts or the law, (2) there is doubt of the defendant's guilt, (3) the defendant has a meritorious defense, or (4) the ends of justice will be better served by holding a trial. *People v. Davis*, 145 Ill. 2d 240, 244 (1991); *Ferral-Mujica*, 2017 IL App (2d) 160240, ¶ 22. A defendant's subjective impressions, absent some proof that they were objectively justified, are insufficient grounds for withdrawing his plea. *Ferral-Mujica*, 2017 IL App (2d) 160240, ¶ 22.

¶ 59    The evidence at the hearing did not rise to these standards. First, the hearing refuted any theory that defendant entered his plea under a misapprehension of the facts or the law. Edens testified that he explained to defendant that guilty knowledge was an element of the child-pornography charges and the State had to prove that knowledge at a trial. Defendant admitted that he had believed that the State had to prove intent. He did not seriously raise any other misapprehensions of fact or law. Second, there was no objective doubt of defendant's guilt; as

Edens and the trial court recognized, the evidence on all of the charges to which defendant pleaded guilty was overwhelming and mostly undisputed. Third, as the court noted, defendant never suggested a meritorious defense to any charge. At most, he speculated that a fact finder might find a reasonable doubt that he touched the inner thigh of a pubescent girl for a nonsexual reason or that photographs of what was undoubtedly his hand close to what was undoubtedly the naked vagina of an underaged girl in a setting that was undoubtedly defendant's bedroom did not prove guilt. Finally, defendant did not show any other reason why the ends of justice would be better served by holding a trial.

¶ 60    On appeal, defendant suggests several potential grounds for filing a motion to withdraw his guilty pleas. The first is his insistence that he was not guilty. Given the lack of an objective basis for defendant's subjective belief, Edens's testimony that defendant equivocated in his response to the discovery materials, and, of course, the overwhelming evidence of guilt, this potential ground could hardly be raised in good faith, much less with a reasonable probability of success. Next, defendant notes his belief that Edens did not adequately review the discovery materials before trial. Again, this subjective belief was unsupported by objective facts in evidence. Next, defendant also notes that he testified that he pleaded guilty despite his actual innocence because he was preoccupied with his failing marriage. The trial court did not need to credit this farfetched testimony, which in any event would not have tended to prove that defendant entered his pleas unknowingly or involuntarily. The prospect of serving several decades in prison based on overwhelming evidence was a much more persuasive explanation for defendant's decision to accept a plea bargain that dismissed most of the charges and gave him a chance of serving an aggregate prison term of no more than 13 years, which is what actually happened. Finally, defendant notes that Edens's initial doubts of his fitness were strong enough to convince him to

request a fitness examination. But the examination concluded that defendant was fit, negating whatever force this purported ground had.

¶ 61    In sum, the trial court properly denied defendant's postconviction petition.

¶ 62                      III. CONCLUSION

¶ 63    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 64    Affirmed.

---

**No. 2-19-0073**

---

| | |
|---|---|
| **Cite as:** | *People v. Newman*, 2021 IL App (2d) 190073 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, Nos. 11-CF-3129, 11-CF-3236; the Hon. Daniel B. Shanes, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Darren E. Miller, of State Appellate Defender's Office, of Elgin, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Michael G. Nerheim, State's Attorney, of Waukegan (Patrick Delfino, Edward R. Psenicka, and Adam Trejo, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

---