2017 IL App (2d) 160240
No. 2-16-0240
Opinion filed March 24, 2017

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of McHenry County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 11-CF-1235 |
| | ) | |
| ARMANDO FERRAL-MUJICA, | ) | Honorable |
| | ) | Michael W. Feetterer, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justices Hutchinson and Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1   Defendant, Armando Ferral-Mujica, appeals from an order of the circuit court of McHenry County denying his motions to withdraw his guilty plea and reconsider his sentence. Defendant argues that the trial court erred in denying his motions, where he pleaded guilty in reliance on his counsel's representation that the trial court expressly stated during an Illinois Supreme Court Rule 402 (eff. July 1, 2012) conference that it would sentence defendant to a prison term between 8 and 12 years. For the reasons that follow, we affirm.

¶ 2                          I. BACKGROUND

¶ 3   On December 22, 2011, defendant was indicted on two counts of attempted first-degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2010)), one count of aggravated battery by

discharging a firearm (720 ILCS 5/12-3.05(e)(1) (West 2010)), two counts of armed violence (720 ILCS 5/33A-2(a) (West 2010)), one count of aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2010)), and three counts of aggravated battery (720 ILCS 5/12-3.05(a)(1), (c), (f)(1) (West 2010)).

¶ 4    The record reflects that the parties engaged in plea negotiations.  On August 15, 2012, defense counsel, Daniel Hofmann, informed the trial court that a plea offer had been extended and he requested a continuance to consider the offer.

¶ 5    On October 24, 2012, defendant authorized Hofmann to participate in a conference pursuant to Illinois Supreme Court Rule 402(d) (eff. July 1, 2012) with the State and Judge Gordon Graham.

¶ 6    On November 29, 2012, the defense requested a one-week continuance.  The State announced that it had no objection to one week but asked that it be the final continuance, because "the offer has been the same for a few months now.  The defense has [*sic*] ample time to consider it.  And if he's not inclined to accept it, we'd rather not delay any further but set the case for trial."

¶ 7    On December 6, 2012, defendant appeared in court.  Hofmann advised the court:

> "MR. HOFMAN [*sic*]:  Your Honor, this is Mr. Armando   Ferral-Mujica.   He's here to present a resolution of the matters currently pending before you.
>
> Where we are at is that he's going to admit the allegations in count III of the bill of indictment.  He would plead guilty to the charge of aggravated battery, a Class X felony.

He knows he's facing a minimum of six to thirty years in prison on that offense, with a good time credit of 4.5 days for each month spent in custody. This would be a blind plea."

¶ 8    The factual basis for the plea established that, on a December evening in 2011, Jesus Agaton, the victim, was approached from behind by two Hispanic males—defendant and his brother—in the vestibule of his apartment building. One of the individuals was holding a machete and the other was holding a handgun. A struggle ensued and eventually moved to the parking lot. The man with the machete struck Agaton in the head and neck. At one point, the man with the machete accidently struck the other assailant. The man with the gun shot Agaton in the chest. The bullet did not penetrate the chest cavity, and Agaton survived. A wallet containing defendant's identification was found in the parking lot. Later that evening, defendant was seen with blood on his shirt, and his brother's head was bleeding.

¶ 9    Hofmann stipulated to the factual basis. Based on the stipulation, the trial court found the facts sufficient for a finding of guilty. Thereafter, the following colloquy occurred:

"THE COURT: ***

Sir, do you understand on your plea of guilty, you are pleading guilty to a charge that calls for penalties of six to thirty years in the penitentiary, and because it's alleged that there was a firearm that was used, that you would need to serve 85 percent of any sentence that is imposed?

Do you understand that?

THE DEFENDANT: (By Interpreter) Yes.

THE COURT: Your plea of guilty has no conditions other than that by entering this plea of guilty all of the other charges contained within the indictment are being dismissed by the State, but the entire range of sentencing is being left to the Court.

Do you understand that?

THE DEFENDANT: (By Interpreter) Yes.

THE COURT: It has not been represented to me that there's any agreements with the State, with your attorney, or anyone else. Is that your understanding also?

THE DEFENDANT: (By Interpreter) Yes.

THE COURT: I will accept the plea as indicated."

Thereafter, the matter was continued for sentencing.

¶ 10    On February 14, 2013, at the outset of the sentencing hearing, Hofmann advised the trial court of new information that had been discovered during the ongoing investigation of the crime, after defendant pleaded guilty. Hofmann also informed the trial court that he had had extensive discussions with defendant about the information and advised defendant that he could withdraw his guilty plea. According to Hofmann, defendant had no desire to do so. Thereafter, the following colloquy occurred:

"THE COURT: You had previously pled guilty to the charge of aggravated battery with a firearm and I'll just repeat for you at this time that this is a Class X felony that calls for 6 to 30 years in the penitentiary, the fines could be up to $25,000 or both and it's normally followed by a period of two years of mandatory supervised release.

[THE STATE]: Judge, I believe it's three years mandatory.

THE COURT: Three years, I'm sorry.

Additionally, I believe it fits in a certain sentencing range and that there is a mandatory minimum of at least 85 percent.

Is that correct, counsel?

[THE STATE]: That's the state's understanding, Judge.

THE COURT: Just so that you're aware that that was the charge that you had previously pled guilty to.

I also want to make certain that you understand that as a result of this conviction, if you are not a citizen you can be deported, denied naturalization or barred from re-entry into the country.

Are you also aware of that?

THE DEFENDANT: Yes.

THE COURT: Since your attorney said that he told you about this additional information, does that change your position as to your previous plea of guilty to these charges?

THE DEFENDANT: Could you repeat the question?

THE COURT: Certainly.

Your attorney just made some representations about some ongoing investigation naming some other individuals, ***. Knowing that information, that your attorney said he spoke to you about, do you still wish to continue with your plea of guilty?

THE DEFENDANT: What do you mean?

THE COURT: You previously pled guilty to these charges.

THE INTERPRETER: He said yes, but what exactly are you saying?

THE COURT: I want to make sure that you still want to plead guilty.

THE DEFENDANT: (Through the interpreter) Yes.

THE COURT: All right."

¶ 11 Thereafter, the parties presented evidence in aggravation and mitigation. The State argued for a 22-year prison sentence; defendant argued for an 8-year prison sentence. The court imposed a sentence of 16 years.

¶ 12 On March 12, 2013, Hofmann filed a motion to reconsider defendant's sentence. On April 1, 2013, defendant filed a *pro se* motion to withdraw his guilty plea and vacate his sentence. New counsel was appointed to represent defendant in the postplea proceedings. On October 24, 2013, the trial court denied the motions.

¶ 13 Defendant filed a notice of appeal on November 12, 2014. On March 26, 2015, the supreme court directed us to treat the notice of appeal as properly perfecting an appeal from the trial court's October 24, 2013, order. We did so, and, on May 5, 2015, we granted defendant's motion for a summary remand for (1) the filing of a valid certificate under Illinois Supreme Court Rule 604(d) (eff. Feb. 6, 2013); (2) the opportunity to file new postplea motions; and (3) a new motion hearing. *People v. Ferral-Mujica*, No. 2-14-1124 (May 5, 2015) (minute order).

¶ 14 On October 22, 2015, defendant filed a motion to reconsider his sentence and a motion to withdraw his plea. The motions, supported by Hofmann's affidavit, contended that the trial court represented to Hofmann during the Rule 402 conference that it would sentence defendant to 8 to 12 years in prison on a plea of guilty to the charge of aggravated battery. In the motion to reconsider his sentence, defendant alleged that he would not have pleaded guilty "had he been aware that the court would deviate from the recommendations of the 402 Conference." He argued that the sentence was excessive "in light of the facts of the case and with no explanation by the court [as to] what additional factors it found to deviate from the 402 Conference." He

asked that his sentence be reduced. In the motion to withdraw his plea, he argued that "there is a clear misunderstanding between the Court, the parties and the defendant as to a 402 Conference and the sentence to be imposed." He maintained that the ends of justice required the court to allow him to withdraw his plea and set the matter for trial.

¶ 15    A hearing on the motions took place on January 20, 2016. Hofmann testified that he participated on defendant's behalf in the Rule 402 conference with Judge Graham and the State. Hofmann testified that, at the time of the Rule 402 conference, he was aware that a different judge had recommended a 16-year sentence for defendant's brother. He shared the information with defendant, who told Hofmann that he would not take a 16-year sentence. During the Rule 402 conference, Judge Graham recommended a sentence of 8 to 12 years. Hofmann advised defendant of this information and defendant entered a blind plea. Defendant was upset when he received a 16-year sentence. Hofmann admitted that he did not obtain an agreed sentence of 8 to 12 years and that the court never stated on the record that it would cap the sentence at 12 years.

¶ 16    Defendant testified that Hofmann told him that the trial court "will have an offer for me from 8 to 12" and that he agreed to plead guilty on that basis. He would not have pleaded guilty if he thought that the court would sentence him to more than 12 years.

¶ 17    McHenry County Assistant State's Attorney Patrick Kenneally testified that he was present at the Rule 402 conference along with Hofmann and Judge Graham. At that conference, Kenneally advised the court that the State would be seeking a sentence of "upwards of the maximum." He believed that the maximum sentence was 30 years and that it would be appropriate given the facts of the case. Hofmann asked Judge Graham if he would consider eight years. Kenneally testified that he made clear to the judge that he wanted to conduct a sentencing hearing so that the judge could see "many of the gruesome pictures which illustrated the

aggravating nature of the crime." He stated that he recalled Judge Graham saying "that he would consider 8 years in the same way that he would consider what the State was asking which was for a significantly higher number than that." He testified: "I don't—there was never a point, and I can say this with certainty, where Judge Graham stated that he would sentence the defendant to between 8 to 12 years." Kenneally stated that he never agreed to a sentencing cap of 12 years and that, had the judge stated that he would sentence defendant to 8 to 12 years, the State would have tried the case.

¶ 18    On February 19, 2016, the trial court denied the motions. With respect to defendant's motion to withdraw his guilty plea, the court found *People v. Radunz*, 180 Ill. App. 3d 734 (1989), dispositive. The court noted that defendant was properly admonished that he could receive a sentence anywhere between 6 and 30 years, that defendant confirmed that he had no agreement with the State, his attorney, or anyone else, and that at no time did defendant indicate that he did not understand what was being said. The court stated: "Defendant ignored the court's admonishments because of what his attorney told him after the 402 conference at his peril; it was not objectively reasonable; and in no way diminished the voluntariness of the plea in light of *Radunz*." Regarding defendant's motion to reconsider his sentence, the court found that the 16-year sentence was appropriate, given the brutality of the attack on a defenseless man.

¶ 19    On February 24, 2016, defendant filed a motion for reconsideration, which the trial court denied on March 28, 2016. On October 3, 2016, we allowed defendant leave to file a late notice of appeal from the order of February 19, 2016.

¶ 20                                    II. ANALYSIS

¶ 21    Defendant argues that the trial court abused its discretion when it denied his motions to withdraw his guilty plea and to reconsider his sentence. He asks that we reduce his sentence to a

12-year term or, alternatively, vacate his conviction of aggravated battery and remand the cause for trial.

¶ 22    A defendant does not have an absolute right to withdraw a guilty plea and bears the burden of demonstrating to the trial court the necessity of withdrawing the plea. *People v. Allen*, 323 Ill. App. 3d 312, 315 (2001). Leave to withdraw a guilty plea is granted not as a matter of right, but only as required to correct a manifest injustice under the facts involved. *People v. Hillenbrand*, 121 Ill. 2d 537, 545 (1988). Leave should be granted if it appears that (1) the plea was entered on a misapprehension of the facts or the law, (2) there is doubt as to the guilt of the accused, (3) the accused has a meritorious defense, or (4) the ends of justice will be better served by submitting the case to a jury. *People v. Davis*, 145 Ill. 2d 240, 244 (1991). Absent substantial objective proof that a defendant's mistaken impressions were reasonably justified, a defendant's subjective impressions are insufficient grounds on which to withdraw a guilty plea. *People v. Hale*, 82 Ill. 2d 172, 176 (1980). A trial court's denial of a motion to withdraw a guilty plea will not be disturbed on appeal unless the decision was an abuse of discretion. *Davis*, 145 Ill. 2d at 244. The same standard applies to the denial of a motion to reconsider a sentence. *People v. Kane*, 404 Ill. App. 3d 132, 139 (2010).

¶ 23    According to defendant, his guilty plea was based on a misapprehension of the facts, specifically, that the trial court stated during the Rule 402 conference that it would impose a sentence of 8 to 12 years. Defendant claims that he reasonably believed that the court had made such a statement, based on Hofmann's representation to him. He claims that his mistaken impression about the court's sentencing intentions was reasonably justified. He thus asserts that he should be permitted to withdraw his plea or that he should be sentenced in accordance with his impression.

¶ 24    We disagree.  First, we note that, although Hofmann testified that the trial court had made a sentencing recommendation of 8 to 12 years during the Rule 402 conference, there is no support for this claim in the record.  (Indeed, Kenneally testified that the trial court made no such recommendation and that the State would never have agreed to a 12-year sentencing cap.)  Under Rule 402(d)(1), if plea discussions take place, the trial court may make a recommendation as to what an appropriate sentence might be and the State or the defendant is free to accept or reject that recommendation.  Ill. S. Ct. R. 402(d)(1) (eff. July 1, 2012).  Here, however, during the trial court's admonitions to defendant, prior to accepting defendant's guilty plea, the court advised defendant that he was "pleading guilty to a charge that calls for penalties of six to thirty years in the penitentiary," that his guilty plea had "no conditions" other than the dismissal of the remaining charges, that the "entire range of sentencing [was] being left to the Court," and that there were no "agreements with the State, with [his] attorney, or anyone else."  Defendant indicated his understanding of these admonishments.  Had defendant thought that there was an agreement with the trial court concerning an 8-to-12-year sentencing range, defendant had an obligation to say so.  Likewise, Hofmann should have made such an agreement part of the record.  Instead, Hofmann told the court:  "[t]his would be a blind plea."  Ordinarily, when an attorney represents that his client is entering a blind plea of guilty, he is informing the trial court that there is no agreement as to the sentence and that "both the State and the defendant [are] free to argue for any sentence provided for in the Unified Code of Corrections."  *People v. Lumzy*, 191 Ill. 2d 182, 187 (2000).  Although there is no express requirement to do so, we deem it best practices for the attorney and the court to spread of record at or near the time of a Rule 402 conference the results of any Rule 402 discussion concerning a sentencing recommendation.

¶ 25    Second, we note that the trial court thoroughly admonished defendant under Rule 402. The purpose of the Rule 402 colloquy is to ensure that a defendant's guilty plea is not accepted unless it is intelligent and voluntary. *People v. Horton*, 250 Ill. App. 3d 944, 951 (1993). This purpose would hardly be served if defendant were allowed to state on the record that no agreements as to sentencing had been reached and then turn around and claim that the trial court had agreed to a sentence of 8 to 12 years. It would reduce the Rule 402 colloquy to a meaningless exercise. See *People v. Robinson*, 157 Ill. App. 3d 622, 629 (1987). Had there been an agreement, it should have been part of that colloquy. As the supreme court stated more than four decades ago, "Rule 402 was designed to insure properly entered pleas of guilty, not to provide for merely an incantation or ceremonial." *People v. Krantz*, 58 Ill. 2d 187, 194-95 (1974); see also *People v. Ramirez*, 162 Ill. 2d 235, 245 (1994) ("exhaustive admonitions cannot be disregarded as merely a ritualistic formality"). Thus, "a defendant cannot be rewarded for disregarding the specific admonitions of the court." *Radunz,* 180 Ill. App. 3d at 742; see also *Robinson*, 157 Ill. App. 3d at 629 ("If a plea of guilty is to have any binding effect or is to be given any subsequent weight, the extensive and exhaustive admonitions given by the circuit court in this case and acknowledged by petitioner must be held to overwhelm petitioner's current assertion that he entered his plea involuntarily.").

¶ 26    Although *Radunz* is factually distinguishable, we find that its underlying rationale is applicable. Defendant cannot be rewarded for ignoring the trial court's specific admonishments concerning his sentence. *Radunz*, 180 Ill. App. 3d at 742. Defendant was properly admonished that he could receive a sentence anywhere between 6 and 30 years. Defendant confirmed that he had no agreement with the State, his attorney, or anyone else. At no time did defendant indicate

that he did not understand what was being said.  For defendant to disregard these admonishments and now essentially claim that an agreement had been reached is not objectively reasonable.

¶ 27                                    III. CONCLUSION

¶ 28    For the reasons stated, we affirm the order of the circuit court of McHenry County denying defendant's motions to withdraw his plea and reconsider his sentence.  As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal.  55 ILCS 5/4-2002(a) (West 2014); see also *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).

¶ 29    Affirmed.