NOTICE
Decision filed 11/22/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 190203-U

NO. 5-19-0203

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Massac County. |
| | ) | |
| v. | ) | No. 16-CF-66 |
| | ) | |
| DAVID I. ROGERS, | ) | Honorable |
| | ) | Joseph M. Leberman, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Cates and Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court's denial of the defendant's motion to withdraw his guilty plea is affirmed where his misapprehension about evidence relating to his dismissed charges being used was not objectively reasonable because the trial court admonished him that this evidence would be used at sentencing.

¶ 2    The defendant, David Rogers, entered an open plea of guilty to one count of predatory criminal sexual assault.  Thereafter, the trial court sentenced him to 17 years' imprisonment followed by a 3-year period of mandatory supervised release.  The defendant then filed a motion to withdraw his guilty plea, which the court denied.  On appeal, the defendant contends that the court abused its discretion in denying his motion to withdraw his guilty plea where, when he entered the plea, he was mistakenly under the impression

1

that evidence relating to his dismissed charges would not be used against him at sentencing; he received ineffective assistance of counsel; and his guilty plea was not knowing and voluntary. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On May 18, 2016, the defendant was charged with four counts of predatory criminal sexual assault (720 ILCS 5/11-1.40(a)(1) (West 2016)), all Class X felonies. On August 15, 2018, the jury trial commenced with *voir dire* and jury selection. On August 17, the parties gave their opening statements, and the State began presenting its case. As part of the State's case, the victim, A.C., testified in detail about the circumstances surrounding all four charges, and an interview of A.C. by an advocate at the Two Rivers Child Advocacy Center (CAC) was introduced into evidence and played for the jury. In the midst of the State's case, the defendant chose to stop the trial and enter into an open guilty plea to one count of predatory criminal sexual assault (count IV). In exchange for pleading guilty, the remaining criminal sexual assault charges were dismissed.

¶ 5      During the guilty plea hearing, the trial court admonished the defendant as to his rights and that the sentencing range for predatory criminal sexual assault was 6 to 60 years' imprisonment. The court also indicated that, since the defendant was entering into an open guilty plea, it would determine the proper sentence after reading the presentence investigation (PSI) report and hearing the evidence and arguments presented at the sentencing hearing. The State then recited the following factual basis for the plea:

     "It would be the evidence the court has heard at this trial with the testimony of [A.C.], which the court has heard under cross-examination, as well as the video recording of her statement to the Two Rivers Child Advocacy Center. In each

2

case, she stated that approximately two months prior to April 26, 2016, she played a game called the guessing game with the defendant at the defendant's residence in Brookport, Massac County, Illinois.

As a part of that game, A.C. *** did testify that she touched the private part of the defendant, and that private part was identified as the defendant's penis, his sex organ.

The circumstances surrounding that touching, as well as other incidents that occurred with the defendant *** indicate that the purpose of the touching was for the sexual arousal of the defendant.

And I would ask the Court to also—I believe the Court can take note of all the evidence its heard in this case as part of the factual basis."

¶ 6 The trial court provided the following explanation for the factual basis to the defendant:

"[G]enerally in the factual basis, the State just tells me what they believe the evidence would show at the trial. Here, we've already started the trial. We have had evidence, and I'm going to consider that evidence along with what—the additional information that [the State] has just stated to me.

Now, I'm only going to consider that evidence as it has an affect [*sic*] and impact on Count IV, which is what you're pleading guilty to and being sentenced on. But you do understand that I'm going to consider the evidence that's presented as part of the factual basis and obviously part of the factual basis I consider at sentencing? Do you have any questions about that?"

The defendant then responded that he did not have any questions. The court accepted his guilty plea, finding that it was made freely and voluntarily, and the defendant understood the nature of the charge and the possible penalties.

¶ 7 At the October 22, 2018, sentencing hearing, the defendant presented the testimony from his sister, Josha Rogers, as evidence in mitigation. Josha testified that their mother had a mental breakdown when they were younger, and she was placed in a mental hospital, which was hard on the defendant. At that time, the siblings were separated, but they were eventually reunited after their father was found, and they went to live with him. The

defendant was a good student in school, and he played baseball, basketball, and football. He received a scholarship to play basketball, but he turned that down when he learned that his girlfriend was pregnant; he decided to attend school closer to home. His daughter was currently nine years old, and he was an involved father, who spent time with his daughter helping her with homework and playing basketball with her, and he also provided financial support for her. His previous incarceration negatively impacted his daughter in that she gained a lot of weight, was really sensitive, and regularly cried about the defendant missing the good moments in her life.

¶ 8    In the defendant's statement of allocution, he apologized to A.C. and her family and expressed remorse for his actions. He indicated that he never wanted the case to go to trial and put A.C. through having to testify about what happened. He also indicated his counsel assured him that if he pled guilty, he would be sentenced to less than 24 years and possibly less than 10 years. He noted that there was a lack of communication between him and his attorneys and expressed some dissatisfaction with their representation. He also indicated that he was told that the State was offering him six years' imprisonment if he pled guilty, but the State never mentioned that to his attorneys.

¶ 9    After the defendant's statement in allocution, the State recommended that the defendant be sentenced to 22 years' imprisonment. The State based its recommendation on the following factors in aggravation. The State argued that the defendant's conduct caused or threatened serious harm and that the harm suffered by the victim as a result of the defendant's actions was outlined in the victim's impact statement. The State noted that the defendant had a prior history of criminal activity, which included a prior felony and a

4

revocation of probation that resulted in incarceration. The State also contended that this sentence was necessary to deter others from committing the same crime. The State further argued that the defendant held a position of trust or supervision over A.C. The State asked the trial court to consider the evidence presented at the trial as well as the victim's impact statement and the severity of the offense. The State indicated that, although there was no prior offer for 6 years' imprisonment, there was a prior offer of 10 years' imprisonment that was made so the victim did not have to testify. However, the victim did have to testify and relive the trauma that she suffered from the defendant's actions. Thus, the State noted that it was no longer requesting a 10-year sentence.

¶ 10 Before the defendant's counsel presented any argument in mitigation, the trial court questioned the defendant about his complaints about his counsel. After talking with the defendant, the court stated that it was not hearing anything to indicate that his attorneys were ineffective in their representation of him. The court then heard arguments in mitigation. The defendant's counsel contended that, although there was an argument that the victim suffered emotional harm, the defendant's conduct did not cause or threaten serious physical harm, and the defendant did not contemplate that his actions would cause serious physical harm. Counsel also contended that the defendant was acting under strong provocation in that he was intoxicated when he committed the criminal sexual assault and that his character and attitude indicated that these circumstances were unlikely to reoccur. Counsel acknowledged that the defendant had one prior felony conviction but noted that he was 28 years old, had been employed for most of his life, and supported his family. Counsel contended that the defendant's incarceration would entail excessive hardship to

5

his family, especially his daughter, who was negatively impacted during the defendant's previous incarceration. Thus, counsel requested a sentence between 8 to 10 years' imprisonment.

¶ 11 After hearing argument, the trial court addressed the defendant about his counsel's argument that he was unlikely to commit another crime and stated, "what bothers me is that there were four different incidents that were relayed either in the CAC interview or the testimony at trial. So, you know, I try to weigh that out." The court also stated, "if this was one incident, that would be one thing. It's four separate incidents. That's what I consider. So, this wasn't just a one-time thing." The court then indicated that it considered the hardship on the defendant's daughter, who had a strong relationship with the defendant, the serious harm that was done to A.C., and the defendant's criminal history. The court noted that it was important that the defendant was in a position of trust in his relationship with A.C., and he violated that trust.

¶ 12 The trial court also indicated that, although it was not holding the fact that the defendant proceeded to trial against him, it was considering the evidence that was presented at the partial trial. The court stated, "it's not that I'm holding the fact you had a trial against you, but once we have the trial, I do have to consider the evidence that I heard at that trial. And I just want to make sure you understand that's two separate things in my mind." The court then stated, "I heard the evidence in this case. I got to hear information that I—at a plea agreement, I probably would not have heard. And *** I think I have to—considering that evidence in imposing a sentence." The court continued as follows:

6

"There were two occasions where you placed your penis in her mouth. On at least one of those, you ejaculated. That, to me, is serious harm. That, to me, is something the court has to consider. And that, to me, is something the court has to consider in the sentence.

There were *** two occasions where you tricked her into touching your penis. And for, you know, a young girl to have that conduct—you know, I watched her testify. I've read the statement from her mother. I think that's something she's going to have to deal with for a long, long time."

¶ 13 The trial court then announced that it was sentencing the defendant to 17 years' imprisonment and asked the defendant if he had any questions about the sentence. The defendant responded, "Sir, I thought you was judging me on *** the count that I pled out to." In response, the court said, "I judged you on that count, which is the 6 to 60 years, and the evidence that I heard." The court then stated that it could not ignore the evidence that it heard.

¶ 14 On October 31, 2018, the defendant filed a *pro se* motion to withdraw his guilty plea, arguing that his plea was not intelligently, knowingly, and voluntarily made because, at the time that he entered his plea, he believed that the allegations contained in the dismissed charges could not be used against him at sentencing. He also claimed that his counsel was ineffective because they told him that the evidence could not be used against him.

¶ 15 Thereafter, on January 9, 2019, the defendant obtained new counsel to represent him on the motion to withdraw his guilty plea. On March 25, 2019, his new counsel filed a first amended motion to withdraw the guilty plea in which similar allegations to those in the initial motion were made. In addition, the motion asserted that the defendant suffered from a misapprehension of fact, he would not have pled guilty if he had known that the evidence

7

relating to the dismissed charges would be considered at sentencing, his trial counsel was ineffective, and he was prejudiced by his trial counsel's ineffectiveness in that he pled guilty on counsels' assurances that the evidence from the dismissed charges would not be used against him.

¶ 16   At the April 29, 2019, hearing on the defendant's motions to withdraw his guilty plea, Cord Wittig, the defendant's trial attorney, testified regarding the plea negotiations during the trial and advice that he and his co-counsel gave to the defendant before the defendant accepted the State's plea offer.  Wittig explained that the terms of the offer were that the State would dismiss three of the charges in exchange for an open plea, and the defendant could decide which charge he wanted to plead guilty to.  He did not recall having any discussions with the defendant about the evidence from the dismissed charges being considered at sentencing.  He explained that he did not remember the defendant specifically asking about it, but he felt like he would not have addressed it because that information had already come out at the partial trial, and it would be difficult to "un-ring that bell."  He did go over the PSI report with the defendant, which contained information about the dismissed charges.

¶ 17   Mark Hunter, Wittig's co-counsel during the trial, testified that he was present during the discussions with the defendant about the plea offer.  He did not remember talking with the defendant about whether the dismissed charges could be used against him at sentencing.  Specifically, he stated, "I don't remember him ever asking that, and I don't believe I told him anything in relation to that because it never came up."  When they

received the PSI report, Wittig initially went over it with the defendant. However, after that, he and Wittig talked to the defendant about the report before sentencing.

¶ 18   The defendant testified that he initially brought up the idea of pleading guilty with his attorneys during the trial. He ultimately decided to plead guilty because he believed that the three dismissed charges would not be considered in his sentence for the charge that he pled guilty to. He explained that he asked his attorneys several times whether the dismissed charges could be used against him, and he was told that they could not. He clarified that he was concerned that the evidence regarding those dismissed charges could be considered. However, when the trial court announced his sentence, the court noted that it had considered that evidence in determining the appropriate sentence. Also, he testified that his attorneys did not go over the PSI report with him. He would not have pled guilty if he had known that evidence would be used against him, and he thought he had a better chance of returning home earlier if that evidence was not considered. He acknowledged that he knew the judge presiding over his trial would be the sentencing judge and that the testimony presented at trial included evidence dealing with all four charges.

¶ 19   After hearing the arguments of counsel, the trial court addressed the defendant and stated that it believed that he was surprised that the evidence relating to the dismissed charges was considered at his sentencing. However, the court also stated that it did not believe that understanding was objectively reasonable as the PSI contained information about the dismissed charges, and the defendant knew that the PSI would be considered. The court also noted that there was a difference between considering a sentence based on dismissed charges and increasing a sentence merely because there were other charges. The

court further noted that it admonished the defendant that it was considering the evidence heard at the trial and the factual basis at sentencing. Thus, the court concluded that the defendant understood the nature of the guilty plea, the possible penalties, and the allegations in the charge. The court also found that the defendant was not provided ineffective assistance of counsel. Accordingly, the court denied the defendant's motion to withdraw his guilty plea. The defendant appeals.

¶ 20                                    II. ANALYSIS

¶ 21    On appeal, the defendant initially contends that his guilty plea should be withdrawn because he was under the mistaken impression that the evidence relating to the dismissed charges could not be used against him at sentencing. A defendant does not have an absolute right to withdraw his guilty plea, and he bears the burden of demonstrating to the trial court the necessity of withdrawing that plea. *People v. Allen*, 323 Ill. App. 3d 312, 315 (2001). Leave to withdraw a guilty plea is only granted as required to correct a manifest injustice under the facts involved. *People v. Hillenbrand*, 121 Ill. 2d 537, 545 (1988). To succeed on a motion to withdraw a guilty plea, defendant must demonstrate that (1) the plea was entered through a misapprehension of the facts or of the law, (2) there is doubt as to the accused's guilt, (3) the accused has a meritorious defense, or (4) the ends of justice will be better served by submitting the case to a jury. *People v. Davis*, 145 Ill. 2d 240, 244 (1991). Absent substantial objective proof that a defendant's mistaken impressions were reasonably justified, a defendant's subjective impressions are insufficient grounds on which to withdraw a guilty plea. *Id*. In general, a determination of whether a defendant's guilty plea should be withdrawn is within the sound discretion of the trial court. *Id*. Thus,

the court's decision will not be disturbed unless that decision was an abuse of discretion. *Id.*

¶ 22  Here, in the midst of his jury trial, and after testimony relating to all four charges was adduced from the victim, the defendant pled guilty to one count of predatory criminal sexual assault. The remaining three counts were dismissed as part of the plea, but there was no agreement as to sentencing. The defendant was ultimately sentenced to 17 years' imprisonment, and, when deciding the appropriate sentence, the trial court considered all of the evidence adduced at trial as well as the State's factual basis. Although the defendant contends that he was under the impression that this evidence would not be used against him, the record on appeal demonstrates that he was admonished before pleading guilty that the trial court would consider this evidence at sentencing.

¶ 23  As part of the factual basis, the State requested that the trial court consider the evidence offered at trial when sentencing the defendant. In response, the court addressed the defendant and advised him that generally, with regard to the factual basis, the State would just recite the evidence that would be presented at trial. However, since the trial had already started, and evidence had already been presented, the court noted that it was going to consider the presented evidence along with the factual basis. The court did clarify that it was only going to consider that evidence as it impacted the charge that the defendant was pleading guilty to; thus, it indicated that the evidence would be considered when sentencing the defendant on that particular charge. The court then asked the defendant if he had any questions about that, and the defendant responded that he did not.

11

¶ 24   The trial court also advised the defendant that it was going to consider the information contained in the PSI report, which included police reports and information regarding the dismissed counts.  Although the defendant claimed that he did not have a chance to review the completed PSI report before sentencing, the record reflects that the trial court gave the defendant's attorneys time to review the report with him before the hearing, and both of his attorneys testified at the hearing on the motion to withdraw the guilty plea that they reviewed the PSI with him.  Further, at the sentencing hearing, after the defendant's counsel indicated that there was a potential problem with some of the information contained in the PSI, the State responded that the court could rely on the testimony presented at trial rather than what was contained in the PSI report.  The court then indicated that it would rely on the evidence that it heard at trial when sentencing the defendant.

¶ 25   At the hearing on the defendant's motion to withdraw his guilty plea, even though the defendant testified that he asked his attorneys whether the evidence from the dismissed charges could be used against him, neither of his two attorneys recalled this conversation or him raising the issue.  Wittig explained that the information had already been presented at the partial trial, and thus, the bell could not be unrung.  Hunter testified that the issue did not come up.  In ruling on the defendant's motion to withdraw his guilty plea, the trial court believed that the defendant was surprised that it considered the evidence related to the dismissed charges, which was evidenced by the fact that the defendant questioned the court about it after sentencing, but the court found that the defendant's mistaken impression was not reasonable as he was admonished to the contrary and had reviewed the PSI report.

¶ 26    After a careful review of the record, we find that the trial court's decision was not an abuse of discretion.  Like the trial court, we recognize that the defendant was likely under a mistaken impression that this evidence would not be used against him at sentencing.  However, we find that his mistake was not objectively reasonable as he was present during the partial trial where the victim's testimony revealed details concerning all four charges and an interview from the victim was played, the PSI report contained information about all four charges, and the court admonished him that the evidence from the trial as well as the PSI report would be considered at sentencing.

¶ 27    Despite the defendant's argument to the contrary, we believe our decision is supported by the cases cited by him in his appellate brief: *People v. Hale*, 82 Ill. 2d 172 (1980), and *People v. Ferral-Mujica*, 2017 IL App (2d) 160240.  In *Hale*, defendant pled guilty to armed robbery but, prior to sentencing, filed a motion to withdraw that plea based on the fact that he was under a mistaken impression that he could withdraw his plea within 30 days of its entry, he would receive probation for pleading guilty, and charges would be filed against his accomplice.  *Hale*, 82 Ill. 2d at 174-75.  Our supreme court affirmed the trial court's denial of his motion to withdraw his guilty plea, finding that he presented no objective proof to show that he was reasonably justified in his mistaken impression as the only evidence introduced concerning his belief that he could withdraw his plea within 30 days was his own assertion.  *Id*. at 175-76.  The court also found that there was no allegation that defendant had a valid defense, or that any other factors were present that would, in the ends of justice, require a finding of error.  *Id*. at 176.

13

¶ 28    Similarly, in *Ferral-Mujica*, the appellate court affirmed the trial court's denial of defendant's motion to withdraw his guilty plea, rejecting defendant's argument that his plea was based on a misapprehension of facts. *Ferral-Mujica*, 2017 IL App (2d) 160240, ¶ 24. There, defendant filed a motion to withdraw his guilty plea because his plea was based on the mistaken impression that the court would sentence him to between 8 and 12 years' imprisonment. *Id*. ¶ 14. In affirming the denial of defendant's motion, the court noted that, although there was testimony from defendant's trial counsel that the court had made a sentencing recommendation of 8 to 12 years' imprisonment during a conference held pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012), there was no support for this claim in the record. *Id*. ¶ 24. In support of that conclusion, the court noted that defendant's counsel had not made any potential agreement part of the record, and he instead indicated to the court that defendant was entering into a blind plea. *Id*. Also, the court noted that, prior to entering the plea, defendant was admonished that the charge he was pleading guilty to carried a potential penalty of 6 to 30 years' imprisonment; his guilty plea had no conditions other than the dismissal of the remaining charges; and there were no agreements with the State, his attorney, or anyone else. *Id*. Defendant never gave any indication that he did not understand those admonishments or that he thought there had been an agreement with the court about the sentencing range. *Id.*

¶ 29    The appellate court also found that defendant was thoroughly admonished pursuant to Rule 402, which was designed to ensure that a defendant's guilty plea is not accepted unless it is intelligent and voluntary. *Id*. ¶ 25. The court concluded that this purpose would not be served if defendant were allowed to state on the record that no agreements as to

14

sentencing had been reached and then turn around and claim that the trial court had agreed to a sentence of 8 to 12 years. *Id.* Accordingly, the court concluded that for defendant to disregard the admonishments and claim that an agreement had been reached was not objectively reasonable. *Id.* ¶ 26.

¶ 30    The defendant here contends that, unlike the admonishments in *Ferral-Mujica*, the trial court's admonishments concerning the use of the evidence relating to the dismissed charges were vague. However, we disagree and find that the court made clear that the evidence relating to the dismissed charges would be considered when it determined the defendant's sentence on count IV, the charge that he pled guilty to. The admonishments combined with the facts that the defendant was present during the trial when the testimony was presented; he was present at the guilty plea hearing when the State requested that the court consider the testimony at trial, and the court indicated that it would do so; and he had an opportunity to review the PSI report, which contained information about those dismissed charges, made any misapprehension objectively unreasonable.

¶ 31    The defendant also argues that his trial counsel was ineffective because his counsel said that the evidence relating to the dismissed charges would not be used against him at sentencing, and he was not given the PSI report to review before sentencing. The fact that a defendant might enter a guilty plea because of counsel's erroneous advice or omissions alone does not destroy the voluntary nature of the plea. *People v. Edmonson*, 408 Ill. App. 3d 880, 884 (2011). Whether the plea was voluntary depends on whether defendant had effective assistance of counsel. *Id.* To establish that counsel was ineffective, defendant must show that (1) counsel's performance was objectively unreasonable and (2) defendant

15

suffered prejudice as a result. *Id.* To show prejudice in the guilty plea context, defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have instead proceeded to trial. *People v. Valdez*, 2016 IL 119860, ¶ 29.

¶ 32     In the present case, we have already found that the defendant's misapprehension was not objectively reasonable because the trial court adequately admonished him concerning the use of the trial testimony before accepting his guilty plea and before sentencing. It is well established that the court's admonishments can cure any prejudice to a defendant resulting from counsel's incorrect advice. *Id.* ¶ 31. Thus, even if the defendant's counsel provided him with incorrect advice about the use of the evidence at issue, the defendant cannot show prejudice here. Further, with regard to the defendant's contention that he was not given an opportunity to review the PSI report before sentencing, we note that both of his attorneys testified that they reviewed the PSI report with him before sentencing. It is the trial court's duty to assess the credibility of the witnesses and weigh the evidence presented, as it is in a better position than an appellate court presented with a cold record. *Racky v. Belfor USA Group, Inc.*, 2017 IL App (1st) 153446, ¶ 107. Although the defendant testified contrary to his attorneys about having an opportunity to review the PSI report, the trial court found that he was given this opportunity before sentencing, and we will not disturb this credibility determination on appeal. Thus, there was no error, and his ineffective assistance claim must fail. See *People v. Richardson*, 189 Ill. 2d 401, 411 (2000) (the prejudice prong of the ineffective-assistance-of-counsel test cannot be established when no error has occurred).

16

¶ 33 The defendant next contends that his due process rights were violated because his guilty plea was not knowing and voluntary due to his misapprehension of the facts, *i.e.*, his misapprehension that the trial court would not consider the allegations of the dismissed charges at sentencing. However, again, as we have previously stated, the court did not abuse its discretion in denying the defendant's motion to withdraw his guilty plea where his misapprehension was not objectively reasonable. Thus, there was no error in the guilty plea proceedings and no due process violation.

¶ 34 The defendant last argues that his waiver of his due process right to a jury trial was invalid because it was based on a misapprehension of the facts and erroneous advice from trial counsel, *i.e.*, that the allegations of the dismissed charges would not be used against him. Although the defendant testified at the hearing on the motion to withdraw his guilty plea that his trial counsel told him that the evidence concerning the dismissed charges presented during the partial trial could not be used against him, the testimony from both of his attorneys did not corroborate his testimony. Both attorneys testified that they did not recall the issue being discussed, and Wittig did not believe that the issue would have been addressed because the victim's testimony at the partial trial had already been presented. However, notwithstanding this, the trial court admonished the defendant before his guilty plea was accepted and before sentencing that this evidence would be considered. Thus, even if his counsel erroneously told him that the evidence could not be used against him, the court's subsequent admonishments to the defendant at the time of the plea agreement remedied any incorrect advice from counsel. Accordingly, we find that the court did not abuse its discretion in denying the defendant's motion to withdraw his guilty plea.

¶ 35                    III. CONCLUSION

¶ 36    For the foregoing reasons, we affirm the judgment of the circuit court of Massac

County.


¶ 37    Affirmed.