NOTICE

Decision filed 09/14/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 210144-U

NO. 5-21-0144

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 17-CF-1455 |
| | ) | |
| SHAVON BROWNLEE, | ) | Honorable |
| | ) | John J. O'Gara, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WHARTON delivered the judgment of the court.
Justices Barberis and Vaughan concurred in the judgment.

**ORDER**

¶ 1   *Held*:  Where the record reveals that (1) postplea counsel complied with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017); (2) the trial court properly admonished the defendant in accordance with Illinois Supreme Court Rule 402 (eff. July 1, 2012), and the defendant confirmed that he understood these admonishments; (3) the defendant is unable to establish grounds to withdraw his plea; and (4) the court did not abuse its discretion in sentencing the defendant, we conclude the defendant has no meritorious arguments. We therefore grant appointed appellate counsel's motion to withdraw.

¶ 2   Defendant, Shavon Brownlee, pleaded guilty to felony murder (720 ILCS 5/9-1(a)(3) (West 2016)) in the death of Phillip Smith.  The circuit court sentenced him to 40 years' imprisonment.  The court denied his motion to withdraw the plea but granted his motion to reconsider the sentence, reducing his prison sentence to 35 years.  Defendant appealed.

1

¶ 3    The defendant's appointed attorney on appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks merit. Accordingly, OSAD has filed a motion to withdraw as counsel for the defendant (see *Anders v. California*, 386 U.S. 738 (1967)) along with a brief in support of the motion. OSAD has provided the defendant with a copy of its *Anders* motion and brief. This court has provided him with ample opportunity to file a written *pro se* brief, memorandum, etc., responding to OSAD's motion or explaining why this appeal has merit. The defendant has filed a response. Having read OSAD's *Anders* motion and brief, the defendant's response thereto, and having examined the record on appeal, this court concludes that the instant appeal does indeed lack merit. There is no potential ground for appeal. Accordingly, we grant OSAD leave to withdraw and affirm the judgment of the circuit court.

¶ 4                                    BACKGROUND

¶ 5    The State originally charged defendant with the murder of Smith and the aggravated battery with a firearm of Teon Slaughter. The murder charge included a 25-year add-on for personally discharging a firearm. See 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2018). Also, the aggravated-battery sentence had to be consecutive to that for murder. See *id.* § 5-8-4(d)(1).

¶ 6    In 2019, the State filed a superseding information charging defendant only with felony murder. The new charge did not include the firearm enhancement. The State agreed to recommend a sentence between 25 and 45 years if defendant would plead guilty to the new charge. He would also have to answer some questions under oath about a codefendant.

¶ 7    A question arose about defendant's fitness to stand trial or plead. The court received a fitness report from Dr. Daniel Cuneo, dated August 5, 2019, in which Dr. Cuneo found defendant fit. The parties stipulated to the substance of Cuneo's findings. Defendant asserted that he was fit

for trial. After questioning defendant about his understanding of the proceedings, the court found him fit for trial.

¶ 8    Defendant assured the trial court that he wanted to accept the plea deal. The court explained to defendant that, in exchange for his plea, the State would dismiss the original 2017 indictment and the court would sentence defendant within the recommenced 25- to 45-year range. Defendant stated that he understood. In response to further questioning from the court, defendant stated that he had a ninth-grade education, could read, write, and understand English, and was not under the influence of any drugs or medication. He was satisfied with his counsel's representation and understood he would have to answer questions under oath after pleading guilty.

¶ 9    The court explained the charge as follows:

"THE COURT: Again, my understanding is you're coming forward today and wanting to admit and plead guilty to the offense of first degree murder, that you committed that offense on August 13, 2017, here in St. Clair County, in that you, without legal justification while committing forcible felony, an armed robbery, in violation of the laws of the State of Illinois, that you injured Phillip Smith multiple times about the body and thereby caused the death of Phillip Smith. Do you understand what it is that you are admitting to and pleading guilty to here today?

THE DEFENDANT: Yes, sir."

¶ 10    The court stated that it concurred in the plea agreement and would sentence defendant within the 25- to 45-year range.

¶ 11    Defendant told the court at one point that he wanted to plead guilty because he was "tired of dealing with this." The court admonished him that he faced "very serious consequences" and should not make a decision based on being tired or frustrated. Defendant clarified that he wanted

3

to plead guilty because it was in his best interest. In response to further questioning from the court, he stated that he understood that he would serve 100% of the sentence for felony murder, and that his prison sentence would be followed by three years of mandatory supervised release (MSR).

¶ 12 Defendant further understood that, by pleading guilty, he would be giving up his right to be presumed innocent, to plead not guilty, to have a jury or bench trial, to call and cross-examine witnesses, put on a defense, and to remain silent. He assured the court that no one had forced or threatened him to plead guilty, and no promises had been made regarding the outcome of his case, other than the stated terms of the agreement.

¶ 13 As a factual basis, the prosecutor asserted that the State could prove beyond a reasonable doubt that, on August 13, 2017, the Illinois State Police responded to a report of a homicide in the Norman E. Owens housing complex in East St. Louis. Officers responding to the scene observed a deceased black male, identified as Smith, in the driver's seat of a vehicle. A second victim, Slaughter, received multiple injuries and was transported to a hospital.

¶ 14 Slaughter told police that, at the time of the attack, he was asleep in the back seat of Smith's car. He awoke to find that he and Smith were injured. He did not see the attackers and could not use his phone because his wrists were injured, so he walked to the nearest apartment and used his head to bang on the door for help.

¶ 15 Officers obtained from a nearby convenience store a surveillance video showing several men entering the store shortly before the shooting. Two of those men were defendant and James O'Neal. Officers spoke to defendant's girlfriend's father. He was at his daughter's house on the night of the shooting when the defendant, Devonte Lindsey, and O'Neal arrived. Defendant said that he, Lindsey, and O'Neal had approached a man sleeping in a car in the Norman Owens housing

4

complex and tried to take a bag from inside the vehicle. However, the driver woke up and struggled with them. Defendant said he injured the driver while O'Neal attacked the man in the back seat.

¶ 16 Lindsey told the police he had recently started "hanging out" with defendant and his cousin, O'Neal. On the night of the incident, the three drove to a store where they discussed robbing "younger people." Defendant and O'Neal were armed with dangerous weapons. The men then drove to a housing complex and walked around looking for someone to rob. Defendant approached Smith's car and told Lindsey he could see a wallet and book bag inside. Defendant thought Smith probably had money on him. He entered the car through the open passenger-side window and tried to take the book bag. Lindsey tried to take the wallet, but Smith woke up when Lindsey reached for it. Defendant punched Smith in the face and attacked him with a dangerous weapon as O'Neal attacked the back-seat passenger. All three men ran back to O'Neal's car and drove to defendant's girlfriend's house. Lindsey was shot twice during the incident. Lindsey initially denied participating in the robbery, claiming he stayed in O'Neal's car, but eventually admitted that his fingerprints would be on Smith's car. Lindsey did not think defendant and O'Neal were going to kill Smith.

¶ 17 Police also interviewed defendant, who initially denied involvement, stating that he did not associate with O'Neal. However, after being shown video-surveillance images of him and O'Neal in the store, he admitted that he might have been with O'Neal that night for a family function. Police recovered defendant's fingerprints from a rear door of Smith's car. Defense counsel stipulated to the factual basis.

¶ 18 Defendant again stated that he wanted to plead guilty. The court accepted the factual basis, found defendant's plea knowing and voluntary, and reiterated that it would sentence defendant

5

within the agreed-upon range. Defendant then answered the prosecutor's questions about O'Neal's participation in the incident.

¶ 19 At sentencing, a jail official testified that defendant had been involved in four batteries during his time at the jail. This was unusual, as less than 10% of the jail population faces disciplinary proceedings.

¶ 20 The circuit court found the following applicable factors in aggravation: (1) deterrence of others, (2) defendant caused or threatened serious harm to people other than the named victim, (3) defendant lacked remorse, and (4) the impact of the crime on the victims' families. The only applicable mitigating factor was defendant's lack of criminal history. The court imposed a 40-year sentence.

¶ 21 On January 15, 2020, defendant filed a *pro se* motion to withdraw his guilty plea and vacate the sentence alleging "ineffective counsel." Defendant alleged that he was unaware that Lindsey gave a new statement shortly before defendant's guilty plea and that counsel was ineffective for allowing him to proceed with the plea under those circumstances. Because the motion alleged that counsel was ineffective, the trial court conducted a *Krankel* hearing. See *People v. Krankel*, 102 Ill. 2d 181 (1984).

¶ 22 Defense counsel said that he was aware of Lindsey's statement and reviewed it with defendant, who felt that he did not have enough time to evaluate the statement before pleading guilty. We note that Lindsey's October 2019 statement contained only one significant difference from his original statement. In the original statement, Lindsey said that he, defendant, and O'Neal drove to Centreville to pick up two other men, but the latter statement asserted that only he, defendant, and O'Neal were in the car.

6

¶ 23    The court observed that the new statement reiterated defendant's involvement in the offense, although it could possibly have been used to impeach Lindsey at a trial. The court found that counsel was not ineffective because he discussed Lindsey's new statement with defendant and the new statement would not have made a substantial difference in defendant's decision whether to plead guilty, stating that "why anybody would rely on that in deciding whether to plead guilty or not doesn't make any sense to me."

¶ 24    The court initially declined to appoint new counsel, but after defendant said that he no longer wanted his attorney to represent him, the court appointed a public defender. New counsel filed an Illinois Supreme Court Rule 604(d) certificate on August 27, 2020, stating that he: (1) consulted with the defendant in person, by mail, by phone or by electronic means to ascertain the defendant's contentions of error in the entry of the plea of guilty and in the sentence; (2) examined the trial court file and report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing; and (3) made any amendments to the motion necessary for the adequate presentation of any defects in those proceedings. See Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

¶ 25    New counsel filed an amended motion to withdraw the guilty plea, alleging that: (1) defendant was not allowed to fully review discovery, including videos, that would have changed his decision to plead guilty; (2) had defendant known about Lindsey's new statement prior to the guilty plea hearing, he would not have pled guilty; (3) defense counsel failed to adequately communicate with defendant; (4) defendant's plea was involuntary where (a) defense counsel was ineffective, and (b) defendant did not understand the nature of the charges; and (5) defendant had a defense worthy of consideration.

7

¶ 26    At a hearing on the motion, defendant testified that, despite repeated requests, his original counsel refused to allow him to see "videos" and that, had he seen them, it would have changed his position on a possible plea deal.  Defendant also testified that he first learned of Lindsey's revised statement on the morning of the plea hearing.  On cross-examination, defendant testified he did not know what was on the videos as he had never seen them.  Had he seen them, he would have known whether they were consistent with police reports.

¶ 27    Counsel, by contrast, said that he showed defendant videos that he thought were pertinent, using a laptop at the courthouse.  He visited defendant in jail more than once prior to the guilty-plea hearing and regularly communicated with him.  In rebuttal, defendant denied that counsel ever showed him videos on a laptop.

¶ 28    The court denied the motion to withdraw.  The court found that the plea was voluntary, there was no mistake of fact or law, and that counsel's representation, while "not perfect," was not constitutionally ineffective.  The court then proceeded to the motion to reconsider the sentence. The court stated that Dr. Cuneo's report indicated that defendant suffered from "an unspecified learning disorder and borderline intellectual functioning," but that these facts were not "touched upon by this Court at the sentencing or relied upon sufficiently in the Court's opinion." Accordingly, the court reduced defendant's sentence to 35 years' imprisonment.  Defendant filed a notice of appeal and the court appointed OSAD.

¶ 29                                ANALYSIS

¶ 30    We agree with OSAD that this appeal presents no issue of even arguable merit.  OSAD first concludes that postplea counsel complied with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017).  The rule requires that counsel representing a defendant on a postplea motion shall: "file with the trial court a certificate stating that the attorney has consulted with the defendant either by

8

phone, mail, electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. July 1, 2017). The certificate must indicate that counsel discussed with the defendant potential errors relating both to the sentence and to the guilty plea. *People v. Tousignant*, 2014 IL 115329, ¶ 20.

¶ 31    Here, counsel filed a certificate stating that he had consulted with defendant to ascertain his contentions of error in the entry of the plea and in the sentence; examined the trial court file and report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing; and made any amendments to the motion necessary to adequately present those alleged defects. As counsel's certificate closely tracked the language of the rule, there is no arguably meritorious contention that counsel failed to comply.

¶ 32    OSAD next concludes that no good-faith contention can be made that defendant's plea was involuntary. Due process requires that a guilty plea must be knowing and voluntary. *People v. Kidd*, 129 Ill. 2d 432, 443 (1989) (citing *Boykin v. Alabama*, 395 U.S. 238 (1969)). To that end, Illinois Supreme Court Rule 402 requires that, prior to accepting a guilty plea, the trial court admonish the defendant (1) of the nature of the charge, (2) of the minimum and maximum sentence prescribed by law, (3) that the defendant has the right to plead not guilty, and (4) that if the defendant pleads guilty there will not be a trial of any kind, so that by pleading guilty he or she waives the right to a trial by jury and the right to be confronted with the witnesses against him or her. Ill. S. Ct. R. 402 (eff. July 1, 2012).

¶ 33    Here, the trial court properly admonished defendant about the charge and the minimum and maximum sentences. The court told defendant that he was giving up his right to plead not guilty. The trial court also told defendant that, by entering a guilty plea, he would give up his right to a jury or bench trial at which he could present his own witnesses, cross-examine the State's witnesses, and hold the State to its burden of proving him guilty beyond a reasonable doubt. The court explained the difference between a jury trial and a bench trial. Defendant assured the court that he understood each of these admonishments. Defendant further assured the court that he wanted to plead guilty because doing so was in his best interest and that no one had threatened him or promised him anything in exchange for pleading guilty. Thus, at least as to the initial admonishments, there can be no reasonable argument that defendant's plea was not knowing and voluntary. See *People v. Artale*, 244 Ill. App. 3d 469, 475 (1993) (where record refutes assertions that a plea was not knowing and voluntary, court may deny motion to withdraw plea, as a proper and meticulous admonition of the defendant per Rule 402 cannot simply be ignored).

¶ 34    OSAD further concludes that defendant could not successfully contend that the trial court erred by denying his motion to withdraw his plea. A defendant does not have an absolute right to withdraw a guilty plea and bears the burden of demonstrating the necessity of withdrawing the plea. *People v. Ferral-Mujica*, 2017 IL App (2d) 160240, ¶ 22. A defendant should be allowed to withdraw a guilty plea:

> " 'Where it appears that the plea of guilty was entered on a misapprehension of the facts or of the law, or in consequence of misrepresentations by counsel or the State's Attorney or someone else in authority, or the case is one where there is doubt of the guilt of the accused, or where the accused has a defense worthy of consideration by a jury, or where the ends of justice will be better served by submitting the case to a jury, the court should permit the

10

withdrawal of the plea of guilty and allow the accused to plead not guilty.' " *People v. Davis*, 145 Ill. 2d 240, 244 (1991) (quoting *People v. Morreale*, 412 Ill. 528, 531-32 (1952)).

¶ 35 Lindsey's new statement was not grounds for defendant to withdraw his plea. Defendant admitted in his testimony that he was aware of the new statement before the guilty plea hearing. And in any event, Lindsey's October 2019 statement was consistent with his earlier statement in terms of defendant's involvement in the incident. The only difference was the collateral detail whether the codefendants picked up two additional men prior to the offense. Thus, the trial court could reasonably conclude that defendant's assertion that he would not have pleaded guilty had he seen the statement earlier, did not "make any sense."

¶ 36 Similarly, defendant was not entitled to withdraw his plea based on his assertion that he was not able to see the videos. The trial court could reasonably credit original counsel's detailed testimony that he showed defendant pertinent videos. But even taking defendant's contrary testimony at face value, he cannot establish that viewing the videos would have caused him to reject the State's plea offer. At the hearing, defendant testified that he did not know what the videos showed, as he had not seen them. Thus, he cannot plausibly claim that something on the videos would have caused him to change his plea. Moreover, defendant assured the court at the guilty plea hearing that his plea was voluntary and that he was satisfied with counsel's performance.

¶ 37 A defendant has the burden to establish grounds to withdraw his guilty plea (*Ferral-Mujica*, 2017 IL App (2d) 160240, ¶ 22). At least on the present record, we cannot say that any inability to view the videos affected defendant's decision to plead guilty.

11

¶ 38    We note that defendant received a relatively advantageous offer from the State. The State removed the 25-year firearm add-on from the murder charge and dropped altogether the battery charge involving Slaughter, which upon conviction would have resulted in a sentence of at least 6 years, to be served consecutively to any sentence for murder. Instead, per the plea agreement, he faced a maximum sentence of 45 years. The trial court reasonably rejected defendant's assertion that he would have rejected this offer based on the relatively trivial discovery issues he raised.

¶ 39    OSAD lastly concludes that defendant could not successfully challenge his sentence. Sentencing is within the trial court's discretion and we will not disturb a sentence absent an abuse of that discretion. *People v. O'Neal*, 125 Ill. 2d 291, 297-98 (1988). A sentence within the statutory range is presumed not to be excessive. *People v. Wilson*, 2017 IL App (3d) 150165, ¶ 12. Here, the 35-year sentence, and 3-year MSR period, imposed by the trial court are within both the statutory range for murder (730 ILCS 5/5-4.5-20(a)(1) (West 2018)) and the recommended range agreed upon by the parties.

¶ 40    Further, the record shows that the trial court considered the relevant aggravating and mitigating factors. In adjudicating defendant's motion to reconsider the sentence, the court acknowledged that it may have given insufficient consideration to a mitigating factor and reduced defendant's sentence accordingly. While defendant had no previous criminal record, the crime was serious. Although Smith's death was the basis for the charge to which defendant pleaded guilty, the trial court also properly considered the serious injuries suffered by Slaughter (the charge that was dropped pursuant to the plea agreement). Defendant nonetheless received a sentence at the exact midpoint of the agreed-upon sentencing range. Thus, there is no good-faith argument that the trial court abused its discretion in sentencing defendant.

¶ 41    In response to OSAD's *Anders* motion, defendant has filed what appears to be a *pro se* brief. He argues that he should have been allowed to withdraw his plea based on Lindsey's new statement and his being unable to view the videos. He also raises two additional claims: that the trial court did not admonish him that intent to kill the victim was an element of the offense to which he pleaded guilty; and that the prospect of Lindsey testifying against him after having entered into a plea agreement in exchange for that testimony violated defendant's right to due process.

¶ 42    As previously discussed, the record flatly refutes the first two claims. Defendant acknowledged that he was aware of Lindsey's revised statement before the plea hearing and the trial court reasonably credited defense counsel's testimony that he showed defendant the pertinent videos.

¶ 43    Moreover, as the circuit court noted, Lindsey's new statement differed only in the collateral detail of whether they picked up additional passengers before committing the crime. His account of defendant's involvement remained unchanged. The circuit court found incredible defendant's assertion that he would have rejected the State's relatively generous plea offer and insisted on going to trial based on this inconsequential discrepancy. With regard to the videos, defendant's claim that he would have rejected the State's plea offer based on the content of the videos is inconsistent with his testimony that he had not seen them.

¶ 44    The third claim, that the trial court did not inform him that intent to kill the victim was an element of the offense, is meritless. Defendant was charged with felony murder. Intent to cause the victim's death is not an element of felony murder. See 720 ILCS 5/9-1(a)(3) (West 2018) ("A person who kills an individual without lawful justification commits first degree murder if, in

13

performing the acts which cause the death ***[,] he is attempting or committing a forcible felony other than second degree murder.").

¶ 45    Here, the State filed an amended information that included all the statutory elements. At the plea hearing, the court recited the charge in detail and defendant said that he understood the nature of the offense. Thus, the record refutes any claim that defendant did not understand the nature and elements of the offense.

¶ 46    Defendant cites *Henderson v. Morgan*, 426 U.S. 637 (1976), which is readily distinguishable. There, the defendant was charged with first degree murder. He was allowed to plead guilty to second degree murder, but the prosecution never filed a written charge alleging that offense. The defendant, who had an exceptionally low IQ and had always maintained that he did not intend to kill the victim, was never informed that the intent to kill the victim was an element of second degree murder. Under those circumstances, the Court held that his plea was involuntary. *Id.* at 646-47.

¶ 47    Here, intent to kill was *not* an element of felony murder. The State filed an amended information including the statutory elements. The trial court read defendant the charge, which he said he understood.

¶ 48    Defendant's last claim is that the State offering Lindsey a plea deal in exchange for his testimony against defendant violated defendant's right to due process. Defendant cites no authority for the assertion that this common practice somehow violated his constitutional rights, and has therefore waived it. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). In any event, such agreements have been routinely upheld so long as the witness is required to testify truthfully. See, *e.g.*, *People v. Cotton*, 393 Ill. App. 3d 237, 252-55 (2009).

14

¶ 49    Defendant further claims for the first time that he was "prejudiced by this perjured testimony." Defendant does not further explain this claim. There was no "testimony," as defendant pleaded guilty. At the plea hearing, he stipulated to the factual basis and waived the right to subject the State's case to adversarial scrutiny.

¶ 50                                    CONCLUSION

¶ 51    For the foregoing reasons, OSAD's *Anders* motion is granted, and the judgment of the circuit court is affirmed.

¶ 52    Motion granted; judgment affirmed.