2023 IL App (1st) 211477-U

No. 1-21-1477

Order filed July 18, 2023

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 4106 |
| | ) | |
| DEMOND PATTON, | ) | Honorable |
| | ) | Michael Kane, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Ellis and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court's order denying defendant's motion to withdraw his guilty plea is affirmed over his contentions that he pled guilty based on a misrepresentation regarding his codefendant girlfriend's plea offer and postplea counsel was ineffective for failing to raise the misrepresentation claim.

¶ 2    Defendant Demond Patton pleaded guilty to kidnapping and aggravated battery in exchange for consecutive sentences of seven years in prison for kidnapping and eight years in prison for aggravated battery. He appeals the trial court's order denying his motion to withdraw

his guilty plea pursuant to Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). Defendant argues that his guilty plea was involuntary because plea counsel and the State misled him to believe the plea offered to his girlfriend, codefendant Latanya Holiday, was part of a "couple's deal" and contingent on him pleading guilty. In the alternative, he argues his postplea counsel provided ineffective assistance by failing to litigate the misrepresentation claim raised in his *pro se* motion to withdraw. We affirm.

¶ 3     Defendant and codefendants Latanya and Damien Holiday were charged together by indictment with 14 counts of attempted first degree murder, aggravated kidnapping, armed robbery, aggravated battery, and aggravated unlawful restraint, premised on an incident in Chicago on January 29, 2016.[1]

¶ 4     On October 21, 2019, the day set for defendant and Latanya's trials, the trial court conducted a joint plea hearing as to defendant and Latanya. Throughout the plea proceedings, defendant was represented by the office of the Cook County Public Defender. Prior to the plea hearing, the assistant public defender representing defendant was substituted multiple times.

¶ 5     During the plea hearing, the State amended an aggravated kidnapping count against defendant to a kidnapping count. The court admonished defendant that he was pleading guilty to kidnapping (count III), which was a Class 2 felony with a sentencing range of 3 to 7 years, and he would receive a 7-year sentence, to be served at 50%. The court also admonished defendant he was pleading guilty to aggravated battery (count V), a Class X felony with a sentencing range of

---

[1] Because codefendants Latanya Holiday and Damien Holiday share the same last name, we refer to both by their first names. The record reflects that, while charged together with defendant and Latanya, Damien pled guilty in a separate proceeding prior to defendant and Latanya's joint plea hearing. Latanya and Damien are not parties to this appeal.

6 to 45 years, and he would receive an 8-year sentence, to be served consecutive to the kidnapping sentence. The court then questioned defendant as follows:

"THE COURT: ***

Is that your understanding of the plea agreement?

DEFENDANT PATTON: Right.

THE COURT: Okay. Is there anything else you think you're getting?

DEFENDANT PATTON: No. That's it.

THE COURT: Okay. Also you'll be doing 3 years mandatory supervised release on the Class X. So when you get out, there's 3 years that you serve under the guidance of the Department of Corrections.

DEFENDANT PATTON: Yes.

THE COURT: So you understand that to be your total plea agreement, correct?

DEFENDANT PATTON: Yes.

THE COURT: There's nothing else except for the time that I'm giving you for time considered served, time actually served.

DEFENDANT PATTON: Correct."

¶ 6     Defendant also confirmed he understood that, by pleading guilty, he gave up his rights to receive a trial by judge or jury, require the State to prove him guilty beyond a reasonable doubt, see and hear witnesses testifying against him, cross-examine those witnesses, subpoena and call his own witnesses, and testify on his own behalf.

¶ 7     Referring to the jury waiver form, the court questioned defendant as follows:

"THE COURT: Mr. Patton, did you sign this document?

DEFENDANT PATTON: Yes.

THE COURT: Did you sign it freely and voluntarily?

DEFENDANT PATTON: Yes.

THE COURT: Did anybody threaten you or promise you anything in order to get you to sign it?

DEFENDANT PATTON: No.

THE COURT: Did you understand by signing it you're giving up your right to a jury trial?

DEFENDANT PATTON: Yes."

¶ 8 Defendant pleaded guilty to kidnapping (720 ILCS 5/10-2(a)(5) (West 2016)) and aggravated battery (720 ILCS 5/12-3.05(a)(2) (West 2016)) in exchange for consecutive sentences of seven years in prison for kidnapping and eight years in prison for aggravated battery. The State nol-prossed the remaining counts. During the same plea proceeding, codefendant Latanya pleaded guilty to armed robbery in exchange for a sentence of 10 years in prison.

¶ 9 The factual basis supporting defendant's guilty plea established that, if called, Detective Downes (no first name given) and Franklyn Frett, the victim in the case, would testify that the incident occurred on January 29, 2016, at about 1:45 a.m., in a home near the 8300 block of South Kingston Avenue. A woman called Frett using a phone registered to defendant. Frett arrived at the home and went inside under the belief that "some kind of record deal" was involved. Defendant and Latanya appeared in the room and grabbed Frett. They strapped him to a chair using an extension cord and clear tape, and defendant struck him using a metal bat and his hands and fist. Boiling water was also thrown on Frett.

¶ 10    The evidence would establish that Latanya and the "other defendants" took from Frett $160, house keys, and a small speaker.[2] After threatening to kill Frett if he reported the incident to the police, they let him go. Frett went to a store, called the police, and was taken to a hospital. He was diagnosed with third degree burns to about 50% of his body, a broken right arm, multiple facial contusions, and multiple lower leg and body contusions. Frett identified defendant and Latanya from photo arrays as the individuals who had committed the offenses. Defendant stipulated to the factual basis.

¶ 11    On November 19, 2019, defendant filed a *pro se* motion to withdraw his guilty plea.[3] In the body of the motion, entitled " 'Affidavit,' " he requested leave to withdraw his guilty plea and change his plea to not guilty "due to coercion." Defendant asserted that, during a meeting on October 21, 2019, with his public defender (plea counsel) and her second chair, plea counsel told him his girlfriend Latanya's plea deal was taken "off the table" by the State when Latanya refused to testify against him at trial. Defendant was then informed that the State made him an offer: if defendant pleaded guilty to two felony counts, the State would give Latanya a sentence of 10 years served at 50%, leaving her with only one year remaining in prison. However, "it had to be a 'couple deal,' " otherwise, he and Latanya would be prosecuted on all "13" counts as charged.

---

[2] The stipulation provided that, in addition to defendant, Latanya, and Damien, two other offenders were involved but had not been arrested at the time of defendant's plea proceeding.

[3] The supplemental record also contains a *pro se* "motion for ineffectiveness assistance of counsel § 14A.03," which is dated November 20, 2019, but has no file stamp. The reports of proceedings show the trial court continued the motion in order to first address the motion to withdraw the plea. It denied the motion to withdraw the plea and defendant filed the notice of appeal underlying this appeal on November 12, 2021. On January 27, 2022, the trial court denied the ineffective assistance of counsel motion. Although the *pro se* posttrial motion alleging ineffective assistance of counsel was still pending when defendant filed his notice of appeal in the case at bar, this does not invalidate the notice of appeal and this court has jurisdiction to consider the appeal. See *People v. Darr*, 2018 IL App (3d) 150562, ¶¶ 94-99.

¶ 12    Defendant asserted he "felt bullied/coerced" to accept the State's plea offer. Once he signed the jury waiver and plea deal, his plea counsel's "second chair" told him "what [he] did was real 'admirable,' " which led defendant to "further believe" he was coerced and obligated to remove the State's "pressure" and "heat" from Latanya. Defendant claimed that the State and public defender knew he would not allow Latanya to spend more time away from her children, and he had no choice "but to not subject [her] to retaliation from the State."

¶ 13    Defendant further asserted that he later learned Latanya had received another plea offer, which was also 10 years served at 50%. His plea counsel and second chair informed him that Latanya had agreed to "this deal" and "signed the papers." They told him that, for this "plea deal to work" and so that the State would not withdraw Latanya's "signed plea deal," he had to plead guilty to two felony counts with consecutive sentencing. Having received this information, defendant signed the jury waiver and agreed to the plea deal. He asserted that if Latanya's plea deal was truly a couple's deal contingent on him agreeing to his plea deal, his signature "should have come before her(s) (which is what they had [him] *** believe) not after and then there could have been no threat [to] withdraw *** her offer which caused [him] to believe and feel that [he] was coerced into signing/accepting (the State([']s)) offer."

¶ 14    The trial court appointed defendant postplea counsel. On July 28, 2021, postplea counsel filed a supplemental motion to withdraw defendant's plea of guilty and vacate judgment. Counsel stated the State's offer was that "[i]f Defendant pled guilty to two felony counts, the State would agree to offer Latanya Holiday, Defendant's girlfriend, a sentence of 10 years in [prison] to be served at 50 percent." Counsel argued that the State referred to defendant's plea offer as a " 'couple deal,' " and the State's actions against Latanya were based on whether defendant was willing to

plead guilty. "If defendant did not agree to plead guilty, the State claimed they would prosecute Latanya Holiday to the fullest extent of the law." Counsel argued that the State "coerced [defendant] into involuntarily pleading guilty by not just threatening him with [prosecuting] his case to the fullest extent of the law, but by threatening to prosecute his girlfriend Latanya Holiday in the same manner." Defendant therefore sought to withdraw his guilty plea, and requested the court to vacate the judgment and set his case for trial.

¶ 15    That same date, counsel also filed a certificate pursuant to Illinois Supreme Court Rule 604(d) (eff. July 1, 2017), stating that he (1) consulted with defendant through an electronic video conference and mail to ascertain his contentions of error in pleading guilty; (2) examined the trial court file and report of proceedings of the guilty plea; and (3) made necessary amendments to the motion "for an adequate presentation of any defects in those proceedings."

¶ 16    On November 2, 2021, the State filed a response, arguing that defendant was properly admonished regarding his guilty plea, and the record showed that he pled guilty freely and voluntarily. The State argued that the only evidence of any couple's deal was defendant's "self-serving uncorroborated affidavit," as his claims were not supported with an affidavit from either Latanya or plea counsel.

¶ 17    On November 12, 2021, the trial court conducted a hearing on defendant's motion to withdraw his guilty plea.

¶ 18    Defendant testified that Latanya was his fiancée, and she had three children.[4] Defendant had discussed the State's plea offer with plea counsel and plea counsel's "No. 2." Regarding the conditions of his plea, defendant understood that if he pled guilty to the combined sentence of 15

---

[4] This section of the transcript refers to Latanya as "Natalia Holiday."

years in prison, Latanya would receive a sentence of 10 years in prison at 50%, which meant she would serve an additional 6 months and be released instead of receiving "the full 12 years." Latanya's sentence was conditioned on him pleading guilty, and he decided to plead guilty so she could "go home, get off, whatever you want to call it" and see her children. Defendant confirmed that he wanted to go to trial in his case, but did not because "that was my wife, that's how I looked at it," she had already served 4½ years, and she had missed her daughter's graduation and prom. He "took the time so she could go home and be with the kids."

¶ 19   In closing, defendant's postplea counsel argued it was "up to [the court] to decide" whether "hanging [Latanya's] sentence over the Defendant's head in order to entice him to plead guilty is coercive enough to render the plea of guilty involuntary." The State argued that defendant never brought the alleged coercion to the court's attention, he had not met his burden to show that he was coerced, and it was not coercion of defendant for the State to "potentially charge the Co-Defendant as charged and go forward and fully prosecute that Co-Defendant." The State noted that defendant did not present any supporting affidavits or information from anyone else that "this couple's kind of deal" existed. The defense responded that conducting both pleas at the same time did "lend credence" to defendant's testimony that it was a couple's deal.

¶ 20   The court denied defendant's motion. It remarked that handling codefendant pleas together was a "fairly common procedure." The court, which had presided over defendant's plea, noted that defendant's plea was "very smooth," his waivers were "very simple," defendant had denied that he was forced to plead guilty, and he had denied "there was anything else that was part of his plea." The court also stated that it typically stops and has a defendant review the plea deal with counsel

where the defendant shows reluctance to plead guilty, but none of that took place here and defendant "went along" with the admonishments the court gave him.

¶ 21    The court also stated that, while it understood defendant may have pleaded guilty in part because Latanya "was getting a better deal than he was," it did not "see any coercion here." The court remarked that defendant was represented by "two really good lawyers who knew what they were doing," and defendant was "not alleging [his co-counsels] did anything wrong." Rather, defendant was "simply saying the Co-Defendant got a better deal than [he] did, and [he] wouldn't have taken this plea, [he] should have gone to trial." The court noted that defendant had many opportunities to execute his right to trial but decided to plead guilty and "get a better deal."

¶ 22    On appeal, defendant argues that the trial court erred in denying his motion to withdraw his guilty plea because his plea was involuntary. He asserts he pled guilty based on the misrepresentation by plea counsel and the State that a "couple's deal" existed, in which his girlfriend Latanya would receive a favorable plea deal only if he pled guilty. Defendant claims that the "couple's deal" in fact did not exist.

¶ 23    Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) governs the procedures to be followed where a defendant seeks to challenge a judgment entered after pleading guilty. *People v. Johnson*, 2019 IL 122956, ¶ 24. Rule 604(d) provides that no appeal upon a plea of guilty shall be taken unless the defendant first files in the trial court a motion to withdraw the plea and vacate the judgment. Ill. S. Ct. R. 604(d) (eff. July 1, 2017). If the motion is allowed, the trial court is to vacate the judgment and permit the defendant to withdraw the plea of guilty and plead anew. *Id.* If it is denied, as here, the defendant may file a notice of appeal. *Id.* "Upon appeal any issue not

raised by the defendant in the motion to reconsider the sentence or withdraw the plea of guilty and vacate the judgment shall be deemed waived." *Id.*

¶ 24     "[T]he plea-bargaining process, and negotiated plea agreements, are vital to, and highly desirable for, our criminal justice system," and plea bargaining is to be encouraged when properly administered. *People v. Donelson*, 2013 IL 113603, ¶ 18. "In order to satisfy due process, a guilty plea must be affirmatively shown to have been made voluntarily and intelligently." *People v. Fuller*, 205 Ill. 2d 308, 322 (2002). A defendant does not have an automatic right to withdraw a guilty plea, as "a plea of guilty is a grave act that is not reversible at the defendant's whim." (Internal quotation marks omitted.) *People v. Burge*, 2021 IL 125642, ¶ 37. Rather, the defendant must show "a manifest injustice under the facts involved" to withdraw a guilty plea. *People v. Hughes*, 2012 IL 112817, ¶ 32. Withdrawal is appropriate where the plea was " 'entered on a misapprehension of the facts or of the law, or in consequence of misrepresentations by counsel or the State's Attorney or someone else in authority.' " *People v. Davis*, 145 Ill. 2d 240, 244 (1991) (quoting *People v. Morreale*, 412 Ill. 528, 531-32 (1952)).

¶ 25     "In the absence of substantial objective proof showing that a defendant's mistaken impressions were reasonably justified, subjective impressions alone are not sufficient grounds on which to vacate a guilty plea." *Id.* The defendant bears the burden of showing that "the circumstances existing at the time of the plea, judged by objective standards, justified the mistaken impression." *Id.* The decision to deny a motion to withdraw a guilty plea rests in the trial court's sound discretion and is reviewed for an abuse of discretion. *People v. Delvillar*, 235 Ill. 2d 507, 519 (2009). "An abuse of discretion will be found only where the court's ruling is arbitrary,

fanciful, unreasonable, or no reasonable person would take the view adopted by the trial court."
*Id.*

¶ 26     As an initial matter, we note that defendant never clearly raised before the trial court the theory he now presents on appeal. His *pro se* motion to withdraw largely focused on the theory that the "couple's deal" was used to coerce him into pleading guilty. He never explicitly stated the deal's existence was misrepresented to him, instead noting only that he learned Latanya had signed her deal before he signed his own, contrary to his understanding that her plea offer was contingent on him accepting his own plea offer. Even when testifying in support of his motion, defendant solely stated that the deal was used to coerce him, not that any information was misrepresented to him. Thus, very little record has been developed regarding defendant's claim that he pled guilty based on a misrepresentation.

¶ 27     That said, we find the trial court did not abuse its discretion in denying defendant's motion to withdraw his guilty plea based on an alleged misrepresentation of his plea deal. The record rebuts defendant's claim that his plea counsel and the State communicated a "couple's deal" to him as part of his plea offer, much less that the purported couple's deal was illusory. While being questioned by the trial court during the plea hearing, defendant confirmed with the court that he did not believe he was getting anything else other than the sentence that he received in exchange for his guilty plea, and he understood that to be the total agreement. He confirmed with the trial court that he was not promised anything else in return for pleading guilty, and never communicated to the court any of the terms of the alleged "couple's deal."

¶ 28     "It is well settled that a defendant must alert the court at the guilty plea proceeding if his decision to plead guilty was influenced by something counsel told him that differed from the terms

of the plea as described in court." *People v. Diaz*, 2021 IL App (2d) 191040, ¶ 24. Defendant cannot now "be rewarded for ignoring the trial court's specific admonishments" and claim that additional terms were promised to him. *People v. Ferral-Mujica*, 2017 IL App (2d) 160240, ¶ 26; see also *People v. Greer*, 212 Ill. 2d 192, 211 (2004) (rejecting the defendant's claim that he pleaded guilty in reliance upon an alleged, undisclosed promise regarding sentencing, where the defendant told the court that no additional promises made him plead guilty). We simply "cannot disregard the court's admonishments and defendant's acquiescence." *Diaz*, 2021 IL App (2d) 191040, ¶ 24.

¶ 29    Also, we must note that defendant did not allege in his motion to withdraw any misapprehension of fact or law or that there was a misrepresentation regarding the nature of the offenses to which he pled guilty or the length of the sentence actually imposed. Defendant's plea is not rendered involuntary merely because he feared receiving a longer sentence at the conclusion of a trial prosecuting him on all 14 counts, let alone because he pled guilty based on the fear that Latanya potentially faced a longer sentence following a trial. See *People v. Cox*, 136 Ill. App. 3d 623, 629 (1985) (noting that a guilty plea is not invalidated based on counsel's suggestion that a longer sentence could be imposed if he did not plead guilty).

¶ 30    In sum, defendant did not meet his burden of establishing that he involuntarily pled guilty based on a misrepresentation that Latanya would receive a favorable plea deal if he accepted his own plea deal. Because this record does not show that any manifest injustice occurred relating to his plea proceedings, the trial court did not abuse its discretion when it denied defendant's motion to withdraw his guilty plea.

¶ 31    Defendant alternatively argues that postplea counsel provided ineffective assistance by failing to accurately present defendant's claim that he was "misled by the false premise that his plea was part of a couple's deal" and arguing, instead, that his plea was involuntary because he was coerced into pleading guilty based on the alleged couple's deal.

¶ 32    A criminal defendant has a constitutional right to the effective assistance of counsel at all stages of a criminal proceeding, including postplea proceedings. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *People v. Cabrales*, 325 Ill. App. 3d 1, 6 (2001); accord *People v. Williams*, 2021 IL App (3d) 190298, ¶ 23. "A defendant is entitled to the assistance of counsel in preparing and presenting a motion to withdraw his guilty plea." *People v. Marshall*, 381 Ill. App. 3d 724, 733 (2008). To prevail on an ineffective assistance of counsel claim, a defendant must establish that (1) "counsel's performance was objectively unreasonable under prevailing professional norms," and (2) "there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Cathey*, 2012 IL 111746, ¶ 23 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). Although a defendant must satisfy both prongs of the *Strickland* test (*People v. Jackson*, 2020 IL 124112, ¶ 90), we may resolve an ineffective assistance claim based on either prong (*People v. Pulliam*, 206 Ill. 2d 218, 249 (2002)).

¶ 33    In the context of postplea proceedings, Rule 604(d) establishes the duties of counsel in assisting a defendant with a motion to withdraw a plea and in protecting the defendant's due process rights. *Marshall*, 381 Ill. App. 3d at 733. Under Rule 604(d), postplea counsel must file a certificate stating that counsel (1) "consulted with defendant either by phone, mail, electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of

the plea of guilty"; (2) "examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing"; and (3) "made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

¶ 34     Rule 604(d) serves to "protect the defendant's interests through adequate consultation," and a Rule 604(d) certificate "serves as evidence that the requisite consultation has taken place." (Emphasis and internal quotation marks omitted.) *People v. Gorss*, 2022 IL 126464, ¶ 16. The certificate assures the trial court that postplea counsel has reviewed the defendant's claims and considered the relevant bases for a motion to withdraw a guilty plea. *People v. Dismuke*, 355 Ill. App. 3d 606, 608 (2005). Where postplea counsel's certificate complies with Rule 604(d), " '[t]he certificate itself is all this court will consider to determine compliance with Rule 604(d),' " though we will consider the record where the record undermines the certificate filed. *People v. Curtis*, 2021 IL App (4th) 190658, ¶ 34 (quoting *People v. Neal*, 403 Ill. App. 3d 757, 760 (2010)). Strict compliance with the rule is required, and a cause will be remanded if the record refutes a certificate. *Diaz*, 2021 IL App (2d) 191040, ¶¶ 19-23. We review *de novo* whether there is strict compliance with Rule 604(d). *Id* ¶ 19.

¶ 35     Here, defendant claims postplea counsel should have amended his motion to withdraw the guilty plea to include a claim that defendant was misled into pleading guilty by an illusory couple's deal. Postplea counsel filed a Rule 604(d) certificate, in which he stated that he consulted with defendant, reviewed the record, and made the necessary amendments to defendant's motion to withdraw for an adequate presentation of any defects in those proceedings. The certificate therefore complies with Rule 604(d) and serves as evidence that counsel reviewed defendant's

claims and considered the relevant bases for the motion to withdraw the plea. See *Dismulke*, 355 Ill. App. 3d at 608.

¶ 36    Defendant does not challenge the validity of counsel's Rule 604(d) certificate. Nor does he argue that counsel failed to comply with the Rule 604(d) requirements. Instead, he presents his challenge to postplea counsel's performance as an ineffective assistance of counsel claim, which this court reviews under the *Strickland* standard. See *People v. Tejada-Soto*, 2012 IL App (2d) 110188, ¶ 16. But whether we review defendant's claim under the *Strickland* standard or under the standard applicable to Rule 604(d) claims, defendant's claim fails.

¶ 37    First, we apply *Strickland* to defendant's claim that he was denied effective assistance of postplea counsel by counsel's failure to include a misrepresentation claim in his amended motion to withdraw the guilty plea. We need not address whether, under the first prong of the *Strickland* test, counsel's performance was deficient because we find defendant has failed to satisfy the prejudice requirement under the second prong of the test. See *Pulliam*, 206 Ill. 2d at 249. As we have stated, the record rebuts defendant's claim that he received any promises in exchange for pleading guilty outside of the sentence he received, as he specifically confirmed with the court at the plea hearing that he received no further promises. Apart from defendant's own statement, there is nothing in the record showing that anyone promised him the alleged "couple's deal," much less that the deal was illusory.

¶ 38    If defendant truly was promised anything other than the terms described by the trial court during plea admonishments, he should have alerted the court regarding what he was promised. "It is well settled that a defendant must alert the court at the guilty plea proceeding if his decision to plead guilty was influenced by something counsel told him that differed from the terms of the plea

as described in court." *Diaz*, 2021 IL App (2d) 191040, ¶ 24. Defendant could not simply ignore his admonishments and later state he was given additional promises. *Ferral-Mujica*, 2017 IL App (2d) 160240, ¶ 26. Accordingly, on this record, there is no merit to defendant's claim that he involuntarily pled guilty based on the misrepresentation that his girlfriend would receive a more lenient sentence if he pled guilty.

¶ 39     Because this underlying claim lacks merit, defendant's claim that postplea counsel provided ineffective assistance by failing to precisely raise that claim must also fail, as raising the claim would not have changed the outcome of the postplea proceedings. See *People v. Wilk*, 124 Ill. 2d 93, 108 (1988) (in establishing prejudice in a claim of ineffective assistance of postplea counsel, the defendant must "show the merits of defendant's grounds to withdraw the plea."); see also *People v. Pitsonbarger*, 205 Ill. 2d 444, 465 (2002) (in an ineffective assistance claim, "if the underlying claim has no merit, no prejudice resulted"). On this record, as the outcome of the postplea proceedings would not have changed had the misrepresentation claim been raised, defendant cannot establish that he was prejudiced by postplea counsel's failure to raise the claim and his ineffective assistance of counsel claim fails under *Strickland*. *People v. Enis*, 194 Ill. 2d 361, 377 (2000); *Pulliam*, 206 Ill. 2d at 249.

¶ 40     Second, any claim that counsel failed to comply with Rule 604(d) also fails. Nothing in the record refutes counsel's certification that he consulted with defendant, reviewed the record, and made the necessary amendments to defendant's motion to withdraw the guilty plea for an adequate presentation of any defects in those proceedings, *i.e.*, refutes that postplea counsel complied with Rule 604(d). As we have noted, defendant never clearly raised a misrepresentation claim in his *pro*

*se* motion to withdraw his guilty plea. And his testimony during the hearing on his motion to withdraw the plea does not demonstrate that he intended to raise such a claim.

¶ 41    During the postplea hearing, defendant described the conditions of his offer, testifying that "from what [he] understood, if [he] pled guilty, then [Latanya] would do an additional six months and be released instead of facing the full 12 years." In other words, he described the allegedly misrepresented couple's deal underlying his motion to withdraw the plea. However, defendant did not testify that the offer was illusory or misrepresented to him by plea counsel or the State, even after postplea counsel's questioning afforded him the opportunity to do so. Thus, the record contradicts defendant's claim that postplea counsel failed to accurately present his claim of misrepresentation, when it is not clear that defendant raised or intended to raise that claim in his motion to withdraw. See *Diaz*, 2021 IL App (2d) 191040, ¶¶ 25-26, 36 (finding the defendant's postplea counsel was not required to amend the defendant's motion to withdraw his guilty plea to include a claim not contained in the original *pro se* motion to withdraw, where the record did not indicate the defendant "wanted to raise [the] claim"). Further, even had defendant communicated the theory to postplea counsel, counsel was not required, even under Rule 604(d), "to adopt just any *pro se* allegation," particularly where, as held above, the claim lacked merit. *Id.*

¶ 42    For the foregoing reasons, we affirm the judgment of the trial court.

¶ 43    Affirmed.